1  **HUNTON ANDREWS KURTH LLP**
2  Emily Burkhardt Vicente (State Bar No. 263990)
   ebvicente@HuntonAK.com
3  D. Andrew Quigley (State Bar No. 280986)
   aquigley@HuntonAK.com
4  Veronica A. Torrejón (State Bar No. 310871)
5  vtorrejon@HuntonAK.com
   550 South Hope Street, Suite 2000
6  Los Angeles, California 90071-2627
7  Telephone: 213 • 532 • 2000
   Facsimile: 213 • 532 • 2020
8

9  Attorneys for Defendant
10 HOST INTERNATIONAL, INC.

11            **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13

14 DEBRA LEWIS and MARLENE       Case No.:  2:21-cv-00075 JAK (SKx)
15 MENDOZA,
                                 [Assigned to Hon. John A. Kronstadt]
16
17        Plaintiffs,           **DEFENDANT HOST**
                                **INTERNATIONAL, INC.'S NOTICE**
18    v.                        **OF MOTION AND MOTION TO**
                                **DISMISS PLAINTIFFS' SECOND**
19                              **AMENDED COMPLAINT;**
20 HOST INTERNATIONAL, INC. and **MEMORANDUM IN SUPPORT**
   DOES 1 through 20, inclusive,
21
                                Date:          July 19, 2021
22        Defendants.           Time:          8:30 a.m.
                                Courtroom:     10B
23
24                              Removal Filed:        January 5, 2021
25                              LASC Complaint Filed:  October 13, 2020
                                FAC Filed:            January 25, 2021
26                              SAC Filed:            February 17, 2021
27

28

*(left margin, vertical text)* Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2021 at 8:30 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable John A. Kronstadt, United States District Court Judge, located in the First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, Defendant Host International, Inc. ("Defendant") will, and hereby does, move the Court for an order dismissing Plaintiffs' Second Amended Complaint for Damages ("SAC") in full and with prejudice under Federal Rule of Civil Procedure 12(b)(6). Defendant's Motion is brought on the grounds that Plaintiffs' SAC, and each purported cause of action therein, fails to state facts sufficient to establish a viable claim upon which relief can be granted and any attempt at amendment to cure these deficiencies would be futile. Defendant expressly reserves the right to Answer Plaintiffs' SAC, if any claims remain after its Motion to Dismiss is resolved. *See* Fed.R.Civ.P. 12(a)(4)(A).

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 1, 2021 and February 12, 2021. This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities and Request for Judicial Notice, all the pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter.

DATED:  March 3, 2021                          HUNTON ANDREWS KURTH LLP


                                      By:/*s/Emily Burkhardt Vicente*____
                                              Emily Burkhardt Vicente
                                              D. Andrew Quigley
                                              Veronica A. Torrejón
                                         Attorneys for Defendant
                                         HOST INTERNATIONAL, INC.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ................................................................................2

    A.   The Relationship Between The Parties And The CBA.............................2

    B.   COVID-19 Temporary Furloughs..................................................4

    C.   Plaintiffs' PAGA Notices...........................................................4

III.  LEGAL ARGUMENTS ......................................................................5

    A.   Legal Standard Under Rule 12(b)(6) ............................................5

    B.   Plaintiffs' First Cause Of Action For Violation Of The Los
        Angeles Living Wage Ordinance Should Be Dismissed ........................6

        1.   Plaintiffs' Claim Under The LWO Fails Because The Parties
            Agreed To Supersede The LWO Through A CBA ........................6

        2.   The Court Lacks Jurisdiction To Adjudicate Plaintiffs' LWO
            Claim Because It Is Not Ripe ............................................7

        3.   Plaintiffs' LWO Wage Claim Also Is Preempted Under
            Section 301 Of The LMRA ............................................10

        4.   Plaintiffs' LWO Claim Also Should Be Dismissed Based On
            Garmon Preemption ......................................................12

    C.   Plaintiffs' Second Cause of Action for Failure to Pay Vacation
        Time Fails As A Matter Of Law. ...............................................14

        1.   The Parties Waived The Applicability Of Section 227.3 By
            Instituting Different Vacation Pay Provisions In The CBA ..........14

        2.   Plaintiffs' Section 227.3 Claim Is Preempted By Section 301......16

    D.   Plaintiffs' Third, Fourth and Fifth Causes Of Action Are
        Derivative Of The First Two Claims, And Therefore Also Fail............18

    E.   Plaintiffs' Third Cause of Action For Failure To Pay All Wages
        On Termination Should Be Dismissed Because Host Acted In
        Good Faith......................................................................19

    F.   Plaintiffs' Fourth Cause of Action Additionally Fails to State a
        Claim Because Derivative Wage Statement Claims Are Not
        Cognizable....................................................................20

    G.   Plaintiffs' Fifth Cause Of Action Fails To State A Claim For
        Violation Of California's Unfair Competition Law..........................21

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

i

H.  Plaintiffs' Sixth Cause of Action Fails to State Valid PAGA
    Claims ........................................................................................... 22

    1.  Plaintiffs' PAGA claims must be dismissed when the
        underlying claim is dismissed, and Wage Orders cannot be
        directly enforced through the PAGA ....................................... 22

    2.  Plaintiffs' PAGA claim as to Labor Code Sections 204 and
        210 fail because they did not exhaust those claims and make
        no factual allegations relating to these statutes in the SAC ........... 24

        a.  Plaintiff provided insufficient PAGA notice as to
            Labor Code Sections 204 and 210 ...................................... 24

        b.  Plaintiffs fail to state a claim as to Labor Code
            Sections 204 and 210 because their SAC contains no
            factual allegations relating to these statutes ....................... 24

IV.  CONCLUSION ................................................................................. 25

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT HOST INTERNATIONAL, INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron Bros. Co., a Div. of Chromalloy Am. Corp. v. N.L.R.B.*,
    661 F.2d 750 (9th Cir. 1981) ................................................................. 13

*Addington v. U.S. Airline Pilots Ass'n*,
    606 F.3d 1174 (9th Cir. 2010) ......................................................... 7, 10

*Alonzo v. Maximus, Inc.*,
    832 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................. 20

*Amalgamated Ass'n of St., E.R. & M. C. Emp. v. Lockridge*,
    403 U.S. 274 (1971) ............................................................................... 14

*Archila v. KFC U.S. Properties, Inc.*,
    420 F. App'x 667 (9th Cir. 2011) ......................................................... 24

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................... 5, 25

*Boothby v. Atlas Mech., Inc.*,
    6 Cal. App. 4th 1595 (1992) .................................................................. 15

*Burnside v. Kiewit Pac. Corp.*,
    491 F.3d 1053 (9th Cir. 2007) ................................................................. 7

*Bush v. Vaco Tech. Servs., LLC*,
    2018 WL 2047807 (N.D. Cal. May 2, 2018) ....................................... 4, 23

*Chissie v. WinCo Foods, LLC*,
    2012 WL 487652 (E.D. Cal. Feb. 14, 2012) .......................................... 16

*Choate v. Celite Corp.*,
    215 Cal. App. 4th 1460 (2013) ................................................................. 7

*Culley v. Lincare Inc.*,
    236 F. Supp. 3d 1184 (E.D. Cal. 2017) ................................................. 24

*Curtis v. Irwin Indus., Inc.*,
    913 F.3d 1146 (9th Cir. 2019) ................................................... 10, 11, 17

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

iii

*Diaz v. Grill Concepts Servs., Inc.*,
   23 Cal. App. 5th 859 (2018) ................................................................. 20

*Ethridge v. Harbor House Rest.*,
   861 F.2d 1389 (9th Cir. 1988) ............................................................. 14

*Gunawan v. Howroyd-Wright Employment Agency*,
   997 F. Supp. 2d 1058 (C.D. Cal. 2014) ............................................... 22

*Hall v. Live Nation Worldwide, Inc.*,
   146 F. Supp. 3d 1187 (C.D. Cal. 2015) ..................................... 19, 23, 24

*Hicks v. Ralphs Grocery Co.*,
   2013 WL 12081095 (C.D. Cal. Oct. 8, 2013) ...................................... 15

*Hines v. Anchor Motor Freight, Inc.*,
   424 U.S. 554 (1976) ............................................................................. 12

*Hu v. John Hancock Mut. Life Ins. Co.*,
   108 F.3d 337 (9th Cir. 1997) ............................................................... 12

*Humble v. Boeing Co.*,
   305 F.3d 1004 (9th Cir. 2002) ............................................................. 11

*International Longshoremen's Ass'n v. Davis*,
   476 U.S. 380 (1986) ............................................................................. 12

*Jaco v. Winco Holdings, Inc.*,
   2019 WL 1438069 (E.D. Cal. Mar. 31, 2019) ............................... *passim*

*Johnson v. Sky Chefs, Inc.*,
   2012 WL 4483225 (N.D. Cal. Sept. 27, 2012) .................................... 15

*Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*,
   540 F.3d 1072 (9th Cir. 2008) ............................................................. 13

*Maldonado v Epsilon Plastics, Inc.*,
   22 Cal. App. 5th 1308 (2018) .............................................................. 21

*Metro. Water Dist. of S. California v. Winograd*,
   24 Cal. App. 5th 881 (2018) ................................................................ 10

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ................................................................. 2

iv

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ............................................................. 5

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ............................................................ 5

*Ordonez v. Radio Shack*,
   2011 WL 499279 (C.D. Cal. Feb. 7, 2011) ...................................... 22

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ............................................................. 5

*Pineda v. Bank of Am., N.A.*,
   50 Cal. 4th 1389 (2010) ................................................................... 22

*Platt v. Jack Cooper Transport Co.*,
   959 F.2d 91 (8th Cir. 1992) ............................................................. 14

*Price v. Starbucks Corp.*,
   192 Cal. App. 4th 1136 (2011) .................................................... 22, 23

*Republic Steel Corp. v. Maddox*,
   379 U.S. 650 (1970) ........................................................................ 12

*San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*,
   359 U.S. 236 (1959) ................................................................ *passim*

*Shann v. Durham Sch. Servs., L.P.*,
   182 F. Supp. 3d 1044 (C.D. Cal. 2016) ............................................ 24

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................. 5

*Stallcop v. Kaiser Found. Hosps.*,
   820 F.2d 1044 (9th Cir. 1987) .......................................................... 12

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .......................................................... 25

*Thurman v. Bayshore Transit Mgmt., Inc.*,
   203 Cal. App. 4th 1112 (2012) ......................................................... 24

*Transphase Systems, Inc. v. Southern California Edison Co.*,
   839 F. Supp. 711 (C.D. Cal. 1993) ..................................................... 5

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

*Vaca v. Sipes*,
   386 U.S. 171 (1967) ............................................................................. 12

**Statutes**

29 U.S.C. § 157 .................................................................................................. 13

29 U.S.C. § 158(a)(5) ........................................................................................ 13

29 U.S.C. § 158(d) ............................................................................................. 13

Cal. Code Regs. tit. 8, § 13520 .......................................................................... 19

Cal. Labor Code § 201 ............................................................................. 4, 19, 22

Cal. Labor Code § 203 ......................................................................... 4, 19, 20, 22

Cal. Labor Code § 204 ............................................................................. *passim*

Cal. Labor Code § 210 ............................................................................. *passim*

Cal. Labor Code § 223 ............................................................................. 4, 22, 23

Cal. Labor Code § 225.5 .......................................................................... 4, 22, 23

Cal. Labor Code § 226 ............................................................................. 4, 19, 22

Cal. Labor Code § 226(a) ................................................................................... 20

Cal. Labor Code § 226(e) ................................................................................... 22

Cal. Labor Code § 226.3 .............................................................................. 4, 22

Cal. Labor Code § 227.3 ........................................................................... *passim*

Cal. Labor Code § 558 ......................................................................................... 4

Cal. Labor Code § 2699 ...................................................................................... 24

Cal. Labor Code § 2699(f) .............................................................................. 4, 22

Cal. Labor Code § 2699.3 ................................................................................... 24

Cal. Labor Code § 2699.5 ................................................................................... 24

Los Angeles Admin. Code § 10.37.12 (2016) ............................................... 6, 7, 8

DEFENDANT HOST INTERNATIONAL, INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 5, 24

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT HOST INTERNATIONAL, INC.'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs, members of UNITE HERE Local 11 (the "Union"), bring this putative class action on behalf of themselves and other non-exempt individuals who worked for Defendant Host International, Inc. ("Host") at LAX airport.  Plaintiffs assert two primary claims: (1) Host allegedly failed to pay minimum wages required by the City of Los Angeles Living Wage Ordinance ("LWO"), and (2) Host allegedly failed to pay accrued vacation when Plaintiffs were temporarily furloughed in March and April 2020 due to the COVID-19 pandemic.  Both claims fail as a matter of law because they are nothing more than an improper attempt to circumvent the terms of the collective bargaining agreement ("CBA") that has governed Plaintiffs' employment at all relevant times.

Both the LWO and the California vacation pay statute expressly permit a union and an employer to exempt their employment relationship from the requirements of these laws through a CBA. That is precisely what the parties did here.   The CBA between Host and the Union reflects the parties' express agreement to supersede the LWO's wage requirements.  It also clearly and unmistakably replaces the Labor Code's default vacation pay provisions with different criteria and obligations agreed to by the parties.  As such, Plaintiffs' claims arise, not under the LWO or state law, but under the terms of the parties' CBA. And, under the terms of that CBA, Plaintiffs' claims fail to state a viable claim for relief.  Plaintiffs' LWO claim also is not ripe for adjudication and should be dismissed for this additional reason.

Further, because Plaintiffs' LWO and vacation-based claims turn on analysis of myriad provisions of the CBA, they are preempted under section 301 of the Labor Management Relations Act and must be dismissed for this reason.  Alternatively, to the extent Plaintiffs claim that Host is liable under the LWO for not unilaterally raising wage rates to something other than the rates established by the parties' CBA, such a claim is preempted under the Supreme Court's decision in *San Diego Building*

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

*Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959), because it arguably implicates rights and obligations under sections 7 and 8 of the National Labor Relations Act ("NLRA"). As such, the only proper forum to bring those claims is before the National Labor Relations Board ("NLRB").

Plaintiffs' SAC implies that Host is seeking to avoid paying the LWO minimum wage to its workers. This is untrue. ***Both parties*** agreed in writing to continue the terms of the CBA and, as a result, its supersession of the LWO and vacation statute. They also agreed that when they eventually reach a new CBA, any wage increases agreed upon will be retroactive to the original term of the parties' existing CBA. But how and when the parties reach such an agreement is left to the Union and Host to resolve in the ordinary course of collective bargaining. The applicable precedents are clear that state attempts to interfere in that process are improper.

Plaintiffs' remaining claims for waiting time penalties, allegedly inaccurate wage statements and PAGA penalties all are derivative of the claims discussed above and should be dismissed for the same reasons as the predicate claims.

Accordingly, for the reasons discussed in more detail below, Plaintiffs' claims fail as a matter of law. Plaintiffs' Second Amended Complaint should be dismissed without leave to amend because Plaintiffs have already amended their complaint twice and any further amendment would be futile. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)(both "repeated failure to cure deficiencies by previous amendments" and "futility" are reasons for denying leave to amend).

## II.   BACKGROUND

### A.   The Relationship Between The Parties And The CBA

Plaintiffs are, and seek to represent a putative class comprised of, members of the Union who work at the Los Angeles International Airport ("LAX"). (SAC ¶¶ 14, 20, 48). Defendant Host International, Inc. ("Host") operates concessions and restaurants at LAX. (SAC ¶ 4).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

2

1       The Union and Host entered into a collective bargaining agreement governing

2 the employment of Plaintiffs and putative class members at LAX.  The CBA

3 originally was to cover the period of time from October 1, 2015 through September

4 30, 2018.  *See* SAC ¶ 48; CBA, attached to Request for Judicial Notice ("RJN") at Ex.

5 A.  In August 2018, before the original CBA term expired, the Union and Host agreed

6 to extend the term of the CBA.  *See* Contract Extension, attached at RJN Ex. B.[1]

7       The CBA sets out terms of employment, including wage conditions (Art. 4,

8 Schedule A), vacations (Art. 6), seniority (Art. 9), and dispute resolution (Arts. 10-11,

9 16).  Specifically, Article 4 establishes the wage rates to be paid to bargaining unit

10 employees. Article 6 sets eligibility requirements for vacation entitlement, sets forth

11 how and when vacation time will be paid out, establishes a pro-rata accrual system,

12 defines how employees will receive vacation pay on termination and provides that

13 vacation pay shall not be included as part of an employee's wage.  (CBA, Art. 6).

14       Articles 10 and 11 of the CBA set out the exclusive grievance and arbitration

15 process for claims brought by the Union and bargaining unit employees, and Article

16 16 of the CBA limits the ability of covered employees to bring claims related to

17 contract violations.  Article 16.1 places a 60-day limit on recovery for any employee

18 claims, with the exception of claims for <u>contractual</u> pay increases not given.  Article

19 16.2 states "[v]acation claims shall be filed by the employee not later than sixty days

20 following receipt of improper vacation time or pay.  Claims not filed during this sixty

21 day period are deemed waived."

22       Schedule A of the CBA provides: "[t]his [CBA] shall supersede and be

23 considered to have fulfilled all requirements of the City of Los Angeles Living Wage

24 Ordinances as written and as it may be amended during the life of this Agreement."

25

26

27

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[1] The CBA and extension agreement were also filed as part of Defendant's Notice of Removal, Dkt. 1-4, Exs. 1 and 2.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**B.   COVID-19 Temporary Furloughs**

On March 4, 2020, California Governor Gavin Newsom declared a State of Emergency in California due to the COVID-19 pandemic.  *See* March 4, 2020 Proclamation of a State of Emergency.  On March 17, 2020, Governor Newsom signed Executive Order N-31-20, which issued an unprecedented stay at home order in California and closed all nonessential businesses. *See* Cal.Exec.Order. N-33-20. Due to travel restrictions, closure orders, and other restrictions resulting from the pandemic, Host experienced significant economic downturns in March 2020 and had to unexpectedly place employees on a temporary furlough in March and April 2020. (SAC ¶ 5).  Host provided notice to its LAX employees, the Union and EDD of the temporary furlough in March and April 2020.  (SAC ¶5).

**C.   Plaintiffs' PAGA Notices**

Plaintiffs filed the present lawsuit on October 13, 2020.  Plaintiffs provided PAGA Notice to the LWDA and Host on October 20 and 22, 2020.[2]  (SAC ¶ 75).  The first notice attached Plaintiffs' original Complaint and reiterated its causes of action for alleged violation of the LWO, failure to pay vested vacation time, failure to pay all wages due upon termination, failure to provide accurate itemized wage statements, and violation of California Unfair Competition Law, and then specifically sought PAGA penalties under California Labor Code Sections 226.3, 558, and 2699(f).  The second letter was largely duplicative of the first, but additionally referenced California Labor Code Sections 201-203, 204, 210, 223, 225.5, 226, and 227.3.  *See* PAGA Notices, attached at RJN Exs F and G; *see also Bush v. Vaco Tech. Servs*., LLC, 2018 WL 2047807, at *4 (N.D. Cal. May 2, 2018)("Courts routinely take judicial notice of PAGA notices at the motion to dismiss stage.").

---

[2] The SAC states that the second notice was dated October 23, 2020.  However, as part of the meet and confer process, Plaintiffs' counsel provided copies of the PAGA notices that were served, confirming that the second notice actually was dated October 22, 2020.  The specific date of the second notice is not at issue in this motion.

4

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## III.   **LEGAL ARGUMENTS**

### A.   **Legal Standard Under Rule 12(b)(6)**

Dismissal of a complaint is proper under Rule 12(b)(6) where there is no cognizable legal theory or there is an absence of sufficient facts alleged to support a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Although Plaintiffs' allegations of material fact must be treated as true and construed in the light most favorable to Plaintiffs, this assumption does not apply to conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Transphase Systems, Inc. v. Southern California Edison Co*., 839 F. Supp. 711, 718 (C.D. Cal. 1993).  The factual allegations must be "enough to raise a right to relief above the speculative level" and facts that are "merely consistent with a defendant's liability" are insufficient to state a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In evaluating a motion to dismiss, the court may depend upon documents referenced in the complaint as well as documents crucial to the plaintiffs' claims.  *In re NVIDIA Corp. Sec. Litig*., 768 F.3d 1046, 1051 (9th Cir. 2014)(noting documents incorporated by reference, rather than just those attached, may be relied upon in reviewing the sufficiency of a complaint); *Parrino v. FHP, Inc*., 146 F.3d 699, 705–06 (9th Cir. 1998), as amended (July 28, 1998)("a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.").  Here, Plaintiffs' SAC references and necessarily relies upon the Collective Bargaining Agreement between the Union and Host, including the agreement extending the CBA, and Plaintiffs' PAGA notices. Therefore, all may be properly considered by the Court on this Motion.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**B.    Plaintiffs' First Cause Of Action For Violation Of The Los Angeles Living Wage Ordinance Should Be Dismissed**

Plaintiff's first cause of action for failure to pay the minimum wage rates specified in the Los Angeles Living Wage Ordinance ("LWO") should be dismissed for multiple independent reasons.  <u>First</u>, the LWO expressly permitted the parties to supersede its wage provisions through a Collective Bargaining Agreement ("CBA"), which the parties did.  <u>Second</u>, Plaintiffs' LWO claim is not ripe at this time.  <u>Third</u>, any claim for minimum wage under the LWO is preempted under section 301 of the Labor Management Relations Act because the parties agreed to opt-out of the LWO and provide for minimum wage obligations through the CBA and, therefore, any claim for minimum wage payments is based directly on, and requires interpretation of, the CBA.  <u>Fourth</u>, any claim that Defendant should have unilaterally raised rates to satisfy the LWO is preempted under *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236 (1959), because it seeks to assign state law liability to Defendant for failing to take an action that could have exposed Defendant to an unfair labor practice charge under the National Labor Relations Act.

**1.    Plaintiffs' Claim Under The LWO Fails Because The Parties Agreed To Supersede The LWO Through A CBA**

Plaintiffs cannot maintain an LWO claim because the Union agreed with Host to supersede the requirements of the LWO in the parties' CBA.  The parties entered into the CBA at issue on November 16, 2016, and agreed it would apply retroactively to October 1, 2015.  The version of the LWO in effect at that time contained the following opt-out provision:

> Parties subject to this article may by collective bargaining agreement provide such agreement shall supersede the requirements of this article.

*See* Los Angeles Admin. Code § 10.37.12 (2016), attached at RJN Ex. C.  The parties availed themselves of this LWO provision in their CBA, clearly and unmistakably

agreeing that the CBA would supersede the LWO.  *See* CBA, Schedule A ("[t]his Agreement shall supersede and be considered to have fulfilled all requirements of the City of Los Angeles Living Wage Ordinances as written and as it may be amended during the life of this Agreement.").  Thus, the CBA contains a "clear and unmistakable waiver of state law rights," which the LWO indisputably permitted. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007); *see also Choate v. Celite Corp.*, 215 Cal. App. 4th 1460, 1462 (2013); *Jaco v. Winco Holdings, Inc.*, 2019 WL 1438069, at *4 (E.D. Cal. Mar. 31, 2019).  Plaintiffs therefore cannot state a claim under the LWO.  To find otherwise, would chill the willingness of parties to a CBA to supersede the provisions of the LWO in favor of other bargained-for terms and would interfere with the collective bargaining process in a way that the City of Los Angeles clearly did not intend.

### 2. The Court Lacks Jurisdiction To Adjudicate Plaintiffs' LWO Claim Because It Is Not Ripe

Separately, Plaintiffs' LWO claim is not ripe for adjudication and should be dismissed.  As a general rule, federal courts may only adjudicate claims where an actual case or controversy exists, and may not decide abstract claims based on events that have not yet occurred.  *See Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).  A "question is fit for decision when it can be decided without considering contingent future events that may or may not occur as anticipated, or indeed may not occur at all."  *Id.* (internal quotations omitted).  Here, Plaintiffs' LWO claim is not ripe because it is based on contingent future events that have not (and likely will not) occur.

At the time the CBA at issue was entered into, the 2016 LWO provided that a union and employer could agree to supersede the provisions of the LWO through a CBA, and no minimum wage was required to be paid in order for that supersession to be valid.  *See* Los Angeles Admin. Code § 10.37.12 (2016), attached at RJN Ex. C. In 2018, the LWO was amended.  The new supersession provision allowed a union and

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

an employer to supersede the LWO if the employer paid the minimum wage set out in the LWO.  *See* Los Angeles Admin. Code § 10.37.12 (2018).[3]  That provision requiring payment of minimum wages for supersession to be effective *only* applied, however, to a CBA "that expires or is open for negotiation of compensation terms after the effective date of this ordinance."  *Id.*  In other words, until a CBA expired sometime after enactment of the 2018 LWO, the provision of the prior ordinance still governed and the LWO minimum wage was not required to be paid.  This was explicitly recognized in the Report of the Chief Legislative Analyst, which assessed the likely economic impact of the proposed LWO, and noted, "LAWA contractors may see an increased cost impact *when a CBA expires*."  Report of Chief Legislative Analyst ("Report"), September 18, 2017, at p.3 (emphasis added), attached at RJN Ex. E.[4]  This means that no claim can exist under the 2018 LWO until a CBA expires.

Further, the Rules and Regulations Implementing the 2018 Living Wage Ordinance provide at Regulation #4 that if a "***final CBA*** signed by the Employer and the union supersedes the LWO," the employer is considered exempted from the LWO "for the time period covered by the effective dates of the superseding CBA."  *See* City of Los Angeles, Rules and Regulations Implementing the Living Wage Ordinance (Mar. 20, 2018), attached at RJN Ex. D.  It further provides that if "the Employer has not complied with the LWO requirements during the time period not covered by the superseding CBA, the Employer shall be required ***to make retroactive corrections for any period of violation***, which may include making retroactive payments to affected Employees for the relevant periods of violation."  *Id.*

---

[3] https://bca.lacity.org/Uploads/lwo/Ordinance%2010.15.2018%20Version.pdf

[4] Plaintiffs do not allege in the SAC that the parties' CBA has been "open for negotiation" at any relevant point.  Regardless, the LWO's "open for negotiation" language refers to contracts under the Railway Labor Act and was not intended to cover collective bargaining agreements governed by the NLRA.  Report at p. 5.

DEFENDANT HOST INTERNATIONAL, INC.'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs fail to allege in the SAC that any of this has happened yet, and, indeed, it has not.  The parties are subject to (*and bound by*) an existing CBA, which they agreed to extend "to give the parties additional time to negotiate a new agreement" shortly before the original term of the CBA was set to expire.  *See* Contract Extension, attached at RJN Ex. B.  Without any allegation that the parties have executed a "final CBA"—that is, one concluded **after** the effective date of the 2018 LWO—it is premature for the Court to determine whether Host has committed a violation of the LWO because it is not yet clear whether the "final CBA" will effectively supersede the LWO and what, if any, wages will be owed.  And, if wages are owed after the collective bargaining process plays out, Regulation #4 is clear that the employer may be required to make **retroactive** wage payments to employees covering noncompliance for periods not covered by the superseding CBA.  In other words, the LWO and its implementing regulations were not intended to interfere with the collective bargaining process by forcing immediate changes to wage rates.  Rather, it intended to allow the bargaining process to play out (as it must under federal labor law), and once a final CBA was reached, then, and only then, would wages potentially be retroactively due if the conditions of supersession are not met. Plaintiffs effectively ask this Court to interfere in the collective bargaining process to change bargained-for terms of an existing CBA.  The Court should not wade into these waters.

By bringing their LWO claim now, before the parties have renegotiated their existing CBA, Plaintiffs are putting the cart before the horse.  Indeed, Host has already agreed with the Union that any wage increases in a new CBA will be retroactive to the date of the original term of the current CBA. *See* Contract Extension attached at RJN Ex. B.  In other words, if the parties were to reach agreement on a new CBA tomorrow, Host has already agreed to backpay employees at whatever rate it agrees to increase wages.  Whether or not that eventual increase does, or does not, comply with the 2018 LWO, the Court cannot assess liability or damages until such an agreement is concluded.  *See Addington*, 606 F.3d 1179 (assessing ripeness in duty of

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

9

fair representation case and holding matter not ripe because the viability of the claim depended on "contingencies" that would not be known until a final CBA was signed); *Metro. Water Dist. of S. California v. Winograd*, 24 Cal. App. 5th 881, 892, 234 Cal. Rptr. 3d 622, 631 (2018) (noting that courts will decline to adjudicate a case if it requires them to "speculate on the resolution of hypothetical situations").  Regulation #4 makes clear that the LWO was never intended to disrupt the collective bargaining process, but instead instructed the parties to engage in bargaining at contract expiration and only deal with retroactive pay if needed based on the new agreement.

To assign liability now could create a windfall for Plaintiffs, allowing them to collect alleged unpaid wages once as part of this lawsuit, and again as back wages pursuant to the parties' extension agreement.  This is precisely why Regulation #4 speaks in terms of retroactive liability with respect to periods when parties are negotiating for a new CBA.  Until a "final CBA" is in place, there is nothing with which to evaluate the merits of Plaintiffs' claim that Host has violated the LWO.  The claims, therefore, are premature and must be dismissed.

### 3. Plaintiffs' LWO Wage Claim Also Is Preempted Under Section 301 Of The LMRA

Section 301 of the Labor Management Relations Act operates to broadly preempt state law claims that are either (1) based directly on rights created by a collective bargaining agreement or (2) substantially dependent on analysis of a collective bargaining agreement. *Curtis v. Irwin Indus., Inc*., 913 F.3d 1146, 1152 (9th Cir. 2019).  Courts "may look to facts outside of the complaint to determine whether an 'artfully pleaded' state claim is in reality a Section 301 claim for breach of the [CBA]." *Truex*, 784 F.2d at 1350 (citations omitted).

To determine whether a claim is preempted, courts engage in a two-step analysis.  First, they consider whether the claim implicates an independent right based on state law or a right arising out of a collective bargaining agreement.  *Id*. If the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

claim derives from state law, then courts consider whether resolution of the claim "depends on an analysis" of the collective bargaining agreement. *Id*. at 1153.

Here, Plaintiffs allege they were not paid the minimum wages owed to them under the LWO. However, the LWO expressly allowed for supersession of its requirements and the parties agreed that the terms of the CBA, rather than the LWO, would govern their relationship. This means that any minimum wage claims necessarily arise solely out of the CBA, not the LWO. *See Humble v. Boeing Co.*, 305 F.3d 1004, 1007 (9th Cir. 2002) (finding purpose of section 301 preemption is in part to "prevent plaintiffs from using state law litigation to side-step or alter the balance of the negotiated provisions of a CBA"); *see Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) (where a statute allowed parties to change the default definition of overtime via a CBA, and the CBA met the statute's requirements, the employee's right to overtime "exists solely as a result of the CBA" and is preempted). Thus, the claim here is based on a right arising from the CBA and is preempted.

Alternatively, and at a minimum, resolution of Plaintiffs' minimum wage claim depends on analysis of the CBA. Whether Plaintiffs were properly paid the minimum wages owed to them cannot be adjudicated without analysis of the supersession language in Schedule A of the CBA, the purpose and effect of the extension agreements, and the wage rates established in Article 4.

Since the LWO allowed the parties to change the default rules for minimum wage, and the CBA did so, Plaintiffs' LWO claim exists solely as a result of the CBA or, at a minimum, is substantially dependent on interpretation of the CBA and, therefore, is preempted under federal labor law.

Once a claim is held preempted by Section 301, it must either be treated as a Section 301 claim, or dismissed as preempted: "a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11

379 U.S. 650, 652 (1970); *see also Hines v. Anchor Motor Freight, Inc*., 424 U.S. 554, 563 (1976) (plaintiff cannot "sidestep the grievance machinery provided in the contract;" if he does so, "his independent suit against the employer in the District Court would be dismissed"); *Hu v. John Hancock Mut. Life Ins. Co.*, 108 F.3d 337 (9th Cir. 1997). An employee who has lost his contractual grievance can maintain a Section 301 claim in federal court as a so-called "hybrid" Section 301 claim, but only if "the employee can prove that the union as bargaining agent breached its duty of fair representation in the handling of the employee's grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967). Plaintiffs do not even attempt such allegations in their SAC. Even if they did, such a claim is long since time-barred. Section 301 claims are subject to the six-month statute of limitations contained in Section 10(b) of the National Labor Relations Act. *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1049 (9th Cir. 1987). Thus, Plaintiffs' LWO claim, once held preempted, must be dismissed as untimely and for failure to state a valid hybrid section 301 claim.

### 4.    Plaintiffs' LWO Claim Also Should Be Dismissed Based On *Garmon* Preemption

Under *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*"), courts must defer to the NLRB's exclusive jurisdiction to resolve disputes that are arguably subject to the provisions of the National Labor Relations Act ("NLRA"). When a proceeding is preempted by the principles articulated in *Garmon*, it must be dismissed because the only proper forum to bring the affected claim is before the NLRB. *See International Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 391 (1986).

Section 7 of the NLRA provides employees the right to self-organization, the right to form or join labor organizations, and the right to bargain collectively with their employer through a representative of their choosing. 29 U.S.C. § 157. Section 8(d) of the NLRA prohibits employers from modifying wage rates without the union's consent where the wage rates are governed by an existing collective bargaining

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

agreement.  *See* 29 U.S.C. §158(d); *Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 540 F.3d 1072, 1078 (9th Cir. 2008).  Section 8(a)(5) prohibits employers from making unilateral changes to employees' terms and conditions of employment, like wage rates, even if those changes are favorable to employees, without first bargaining in good faith with their exclusive bargaining representative. *See* 29 U.S.C. §158(a)(5); *Aaron Bros. Co., a Div. of Chromalloy Am. Corp. v. N.L.R.B.*, 661 F.2d 750, 752 (9th Cir. 1981) ("an employer violates Section 8(a)(1) and (5) of the NLRA if he or she institutes a wage change without first consulting and bargaining with the union"). Section 8(a)(5) also prohibits employers from taking certain actions, including refusing to bargain collectively with the union that represents their employees. 29 U.S.C. § 158(a)(5) ("[i]t shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees").

Here, Plaintiffs claim in the SAC that Host unlawfully failed to raise Plaintiffs' wage rates to satisfy those set forth in the 2018 version of the LWO.  Plaintiffs neglect to mention in their SAC, however, that doing so would have meant adopting wage rates different from those agreed to in the CBA, ***during the term of the CBA***, as well as ignoring the parties' contractual agreement to supersede and opt out of those provisions of the LWO.  Plaintiffs' allegations cannot survive a *Garmon* analysis.

Were Host to raise wage rates during the term of the CBA without first obtaining the Union's consent, section 8(d) arguably would prohibit such action.  This is particularly the case where the parties expressly—and lawfully, under the 2016 LWO's plain terms—agreed in the CBA ***not*** to apply the LWO wage rates that Plaintiffs now fault Host for not paying.  Relatedly, and regardless of the term of the CBA, were Host to raise wage rates unilaterally without bargaining for those raises with the Union, it arguably would trigger Section 8(a)(5) of the NLRA.

Thus, the SAC frames a wage dispute, the resolution of which is arguably subject to the provisions of the NLRA as described above. *See Amalgamated Ass'n of St., E.R. & M. C. Emp. v. Lockridge*, 403 U.S. 274, 292 (1971) ("It is the conduct

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

13

being regulated, not the formal description of governing legal standards that is the proper focus of concern" for *Garmon* preemption); *Platt v. Jack Cooper Transport Co.*, 959 F.2d 91, 94 (8th Cir. 1992) ("Preemption turns on the nature of the conduct in question, not on the way it is pleaded").  Because Plaintiffs' LWO claim invites a determination as to whether Host could unilaterally have raised Plaintiffs' wage rates without violating the NLRA, it is preempted by *Garmon* and must be dismissed. *Garmon*, 359 U.S. at 242-45*; Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1396-97 (9th Cir. 1988).

### C.   Plaintiffs' Second Cause of Action for Failure to Pay Vacation Time Fails As A Matter Of Law.

Plaintiffs' second cause of action for violation of Labor Code section 227.3 also fails because the parties agreed to waive the requirements of section 227.3 through the CBA or, in the alternative, because the claim requires analysis of the CBA.[5]

#### 1.   The Parties Waived The Applicability Of Section 227.3 By Instituting Different Vacation Pay Provisions In The CBA

California Labor Code Section 227.3 states:

> ***Unless otherwise provided by a collective-bargaining agreement***, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

---

[5] Host denies it terminated Plaintiffs' employment when it temporarily furloughed them in March and April 2020, and therefore denies Plaintiffs were entitled to any vacation pay under Section 227.3.  Solely for purposes of this Motion, Host assumes Plaintiffs' allegations are true.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Labor Code § 227.3 (emphasis added).  Importantly, section 227.3 expressly allows for its terms to be changed through a CBA. *See Hicks v. Ralphs Grocery Co.*, 2013 WL 12081095, at *4 (C.D. Cal. Oct. 8, 2013) (noting an agreement may "modify" the right to payment of accrued vacation under Section 227.3); *Johnson v. Sky Chefs, Inc.*, 2012 WL 4483225, at *8 (N.D. Cal. Sept. 27, 2012) (citing *Boothby v. Atlas Mech., Inc.*, 6 Cal. App. 4th 1595, 1601 (1992) (finding section 227.3 is a "default rule," that can be modified by CBA)).

Here, the parties elected to modify the requirements of section 227.3 by providing other terms in the CBA.  *See* CBA Article 6. Thus, any claim for failure to pay vacation is not a claim for violation of section 227.3, but is, in reality, a claim for violation of the CBA because the parties chose to opt out (i.e. provide otherwise) through a CBA.

In a similar case, the federal district court for the Eastern District of California found vacation pay claims were exempted from section 227.3 where the parties negotiated changes to the vacation pay requirements of section 227.3 through a CBA. In *Jaco v. Winco Holdings, Inc*., the plaintiff was terminated for gross misconduct. 2019 WL 1438069, at *4 (E.D. Cal. Mar. 31, 2019).  She subsequently filed a class action lawsuit claiming, *inter alia*, that she and the other putative class members were not paid vacation due upon termination in violation of section 227.3.  The defendant argued the plaintiff was not entitled to payout of vacation because the CBA provided that employees terminated for gross misconduct were not entitled to vacation pay at termination. Defendant contended that by providing for a different payout scheme than set out in section 227.3, the parties waived any right to recover under that section.

The district court agreed and dismissed the plaintiff's section 227.3 claim, finding the language "unless otherwise provided by [a CBA]" in section 227.3 allows parties to waive the requirements of section 227.3 through a CBA so long as the waiver is clear and unmistakable. *Id.* at *3-4.  The court found that the waiver in *Jaco* was clear and unmistakable, even though the CBA did not specifically reference

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

15

section 227.3, because the language specifically stated that vacation would not be paid where an employee was terminated for gross misconduct, which was different than the default rule of section 227.3. *Id.* at *5. As such, the Court determined that the parties' CBA clearly intended to modify section 227.3, even though the contract did not reference the statute specifically. *Id.* at *6; *see also Chissie v. WinCo Foods, LLC*, 2012 WL 487652, at *7 (E.D. Cal. Feb. 14, 2012).

Here, as in *Jaco*, the parties clearly intended to replace the provisions of section 227.3 with those in the CBA. As allowed by section 227.3, the parties agreed to their own policies and procedures regarding vacation pay through the CBA and changed the default rules of section 227.3 through collective bargaining. Specifically, while section 227.3 requires payout of vested vacation regardless of how long the employee has worked for the employer and regardless of the reason for separation, the CBA modifies these requirements to provide otherwise. Article 6.3 dictates that an employee who is discharged after working less than six months is entitled to no vacation upon separation and an employee who quits in the first year of employment also is entitled to no vacation upon termination. On the other hand, an employee who is discharged after working more than six months, but less than one year, is entitled to a proportional vacation payout according to a specific formula set out in Article 6.3 of the CBA. All of these provisions differ from the default provisions of section 227.3 and, as in *Jaco*, operate as a clear and unmistakable waiver of the provisions of section 227.3.

As a result, Plaintiffs' vacation pay claim is, in reality, a claim for violation of the vacation payout provisions of the CBA. Therefore, it must be brought, if at all, through the grievance procedures set forth in the CBA, and the state law cause of action should be dismissed.

### 2. Plaintiffs' Section 227.3 Claim Is Preempted By Section 301

Alternatively, Plaintiffs' section 227.3 claim should be dismissed because it is preempted by section 301 of the LMRA. As noted above, a claim is preempted where

16

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

the state law claims are either (1) based directly on rights created by a CBA or (2) substantially dependent on analysis of a CBA. *Curtis*, 913 F.3d at 1152.  Here, as discussed above, the claim is based directly on rights set out in the CBA.  In addition, resolution of the claim is substantially dependent on analysis of the CBA.

The threshold questions to be answered on Plaintiffs' claim for failure to pay vacation upon termination are (1) whether Plaintiffs were entitled to and had accrued vested vacation, (2) whether Plaintiffs were entitled to payout of those amounts on termination, and (3) if so, how much and at what wage rate were Plaintiffs entitled to be paid.  All of these questions require interpretation of the CBA to answer.

For example, it cannot be determined whether any of the Plaintiffs or the class they seek to represent were entitled to any vested vacation – a fundamental premise of their claim for failure to pay vacation – without resort to the CBA's provisions, which dictate how vacation is earned and vested.  *See generally* Article 6.  Article 6.1 provides that an employee does not accrue an entitlement to any vacation until he has been employed for one "uninterrupted and continuous year."  How an "uninterrupted and continuous year" is defined requires interpretation of the CBA.  Likewise, whether an employee is entitled to payout of vacation on termination cannot be determined without analyzing the CBA's requirements, which are expressly different than section 227.3, as discussed above.  While section 227.3 requires payout of vested vacation regardless of how long the employee has worked for the employer and regardless of the reason for separation, the CBA modifies these requirements and provides otherwise.  *See* Article 6.3. As a result, to determine whether Plaintiff or any other putative class member is entitled to a vacation payout on termination necessarily requires interpretation of the CBA to adjudicate the claim.

As to how the value of vacation owed is calculated (another essential element of Plaintiffs' claims), Article 6.4 dictates that vacation allowances only vest in increments of full calendar months. Article 6.5 governs and designates the amount of pay employees will receive for vacation – and this provision is explicitly different

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

17

from section 227.3's default rule that vested vacation pay be paid at an employee's "final rate." Indeed, in Paragraph 47 of the SAC, Plaintiffs allege Host had an obligation under section 227.3 to pay all vested vacation at termination "as wages at his final rate." But, the CBA replaces this term of section 227.3 with different rules that can only be determined by resort to the language of the CBA. Further, the Court must analyze both Articles 6.5 and 6.7 of the CBA to apply the complicated formula for vacation payout which requires interpretation of what the parties meant when they agreed vacation pay was "not included with the employee's wages" and that vacation would be paid at the employee's final rate as of their vacation anniversary – a term that must be understood through interpretation of this provision in the CBA.

In short, Plaintiff's claims rely on provisions of section 227.3 that were altered by the parties' CBA. The essential questions that must be resolved to adjudicate Plaintiffs' vacation pay claim depend upon and require interpretation of the provisions of the CBA. Therefore, under section 301, those claims are preempted. Once held preempted by Section 301, Plaintiffs' vacation claims must be dismissed for the same reasons as their LWO claim. *See supra* at § III.B.3. *See Jaco,* 2019 WL 1438069, at *9 (dismissing with prejudice section 227.3 claims based on section 301 preemption).

### D. Plaintiffs' Third, Fourth and Fifth Causes Of Action Are Derivative Of The First Two Claims, And Therefore Also Fail.

Plaintiffs' third, fourth and fifth causes of action should be dismissed because they are derivative of Plaintiffs' first two claims for relief. Plaintiffs' third cause of action alleges failure to pay all wages due at the time of separation from employment (a "waiting time" claim) based on Host's alleged failure to comply with the LWO and section 227.3 and, therefore, is derivative of those claims. (SAC ¶ 55). Plaintiffs' fourth cause of action also is derivative because it alleges failure to provide accurate wage statements based on an alleged failure to comply with the LWO. (SAC ¶ 59). Plaintiffs' fifth cause of action is derivative because it alleges that Defendant's violations of the LWO and Section 227.3 constituted unfair competition. (SAC ¶ 65).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

18

None of these claims can stand on their own – they require Plaintiffs to prevail on their first two claims to succeed.  Because the underlying claims are preempted and subject to dismissal, the derivative claims also fail as a matter of law.  *See Jaco,* 2019 WL 1438069, at *6 (dismissing derivative claims under Labor Code § 226 and other provisions because underlying claims were preempted); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1204 (C.D. Cal. 2015) (same)).

### E.   Plaintiffs' Third Cause of Action For Failure To Pay All Wages On Termination Should Be Dismissed Because Host Acted In Good Faith

Plaintiffs allege that "[b]y failing to compensate Plaintiffs and members of the Minimum Wage Subclass at rates required by the LWO, and by failing to pay [those wages] promptly upon discharge, Defendants have willfully failed to make timely payment of full wages due to their employees who have separated from employment in violation of Labor Code §§ 201-202."  (SAC ¶ 55). For the reasons discussed above in section III(B)(3), however, Host could not unilaterally raise wage rates without exposing itself to an unfair labor practice claim under the NLRA.  As such, Plaintiffs' claim for waiting time penalties fails because it cannot be that Host willfully violated state law by refraining from action that could have run afoul of federal labor law.

Under Cal. Code Regs. tit. 8, § 13520, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  The regulation further explains that a good faith dispute regarding wages "occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee" and "[t]he fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id.  See also Diaz v. Grill Concepts Servs., Inc*., 23 Cal. App. 5th 859, 868 (2018)("employer's failure to pay is not willful if that failure is due to (1) uncertainty in the law").

Here, Host would have exposed itself to an unfair labor practice charge under the NLRA had it unilaterally raised wages to meet the LWO minimums during the term of the CBA and without bargaining with the Union.  Accordingly, because the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

parties' dispute over wages and whether Host could have unilaterally raised the wage rate to satisfy the LWO constitutes a good faith dispute, Plaintiffs fail to state a claim on which relief can be granted. *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133–34 (C.D. Cal. 2011)(granting summary judgment on waiting time penalty claim where Defendant established the existence of a good faith dispute).

### F.   Plaintiffs' Fourth Cause of Action Additionally Fails to State a Claim Because Derivative Wage Statement Claims Are Not Cognizable

In addition to being preempted because it is derivative of the LWO claim, Plaintiffs' fourth cause of action for failure to provide accurate itemized wage statements also fails for the independent reason that derivative wage statement claims are not recognized in California. Plaintiffs allege, as the sole basis for their wage statement claim, that Host's "policies and practices of failing to pay wages in conformity with the requirements of the LWO necessarily meant that the itemized wage statements of Plaintiffs and putative class members failed to contained [sic] the information required by Labor Code § 226(a)." (SAC ¶ 59). In other words, Plaintiffs do not allege that their wage statements inaccurately reflect the amount paid to them. Instead, they argue that because they allegedly should have been paid more, their wage statements should have reflected this theoretical higher level of pay rather than the amount of pay they actually received.

The California Court of Appeal has squarely rejected such an argument as "illogical." *Maldonado v Epsilon Plastics, Inc.* 22 Cal. App. 5th 1308, 1336 (2018). In *Maldonado v Epsilon Plastics, Inc.*, the employer instituted an alternative workweek schedule and paid employees their regular rate of pay for 10 hours of work and overtime for two hours of work per 12-hour shift. The wage statements provided to the employees correctly reflected the hours worked and the pay actually received by the employees. It ultimately turned out that the alternative workweek structure was unlawful and the employees were entitled to overtime for all hours worked over eight in one day. In light of this, the plaintiffs in *Maldonado* claimed their wage statements

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

20

(which reflected their actual wage rates and not the rate they should have received) were inaccurate. The Court rejected this argument, holding that wage statements are considered accurate when "they correctly reflect[] the hours worked and the pay received." *Id.* The *Maldonado* Court acknowledged that where the pay practice is invalid, the wage statements necessarily will not reflect the amount that should have been earned, but held the remedy there is for the unpaid wages, not wage statement penalties. *Id.* at 1337 (the law "does not mandate that they also receive penalties for the wage statements which accurately reflected their compensation under the rates at which they had worked at the time.")

Here, this case presents the same type of claim rejected by the Court in *Maldonado*. Plaintiffs claim they should have been paid higher wage rates under the LWO and that their wage statements were inaccurate because they did not list these higher wage rates. Plaintiffs acknowledge in the SAC that they received wage statements reflecting the wage rates and amount of wages they actually received from Host. (SAC ¶ 59). Thus, their claim fails as a matter of law under *Maldonado* and the Fourth Cause of Action should be dismissed.

## G.    Plaintiffs' Fifth Cause Of Action Fails To State A Claim For Violation Of California's Unfair Competition Law

Plaintiffs' Fifth Cause of Action for violation of the Unfair Competition Law ("UCL") is wholly derivative of the other causes of action in the SAC. SAC ¶ 65. Where an underlying cause of action fails, a derivative UCL claim fails as well. *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail.").

Moreover, to the extent the UCL claim is derivative of Labor Code sections 203 or 226 specifically, the California Supreme Court has held that penalties are not restitution and therefore UCL claims cannot be predicated upon violations of Labor Code sections 203 or 226. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010) ("Permitting recovery of section 203 penalties via the UCL would not restore

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

21

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

the status quo by returning to the plaintiff funds in which he or she has an ownership interest. . . We thus hold section 203 penalties cannot be recovered as restitution under the UCL"); *Gunawan v. Howroyd-Wright Employment Agency*, 997 F. Supp. 2d 1058, 1070 (C.D. Cal. 2014)(holding plaintiff's claims under Labor Code sections 203 and 226 were "insufficient" because the plaintiff "suffered no economic injury as a result and statutory penalties are not available under the UCL."); *Ordonez v. Radio Shack*, No. CV 10-7060 CAS MANX, 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) ("However, to the extent plaintiff's UCL claim is based upon his allegations that defendant failed to keep accurate records, the Court determines that Section 226(e) on its face provides for penalties rather than restitution and therefore cannot be the predicate violation on which to base plaintiff's UCL claim."). For this additional reason, Plaintiffs' UCL claims based on sections 203 and 226 must be dismissed.

## H. Plaintiffs' Sixth Cause of Action Fails to State Valid PAGA Claims

Plaintiffs' sixth cause of action seeks to recover PAGA civil penalties "under Labor Code sections §§201-203, 204, 210, 223, 225.5, 226, 226.3, 227.3, and 2699(f) and Wage Order 5." (SAC ¶ 74). Plaintiffs' PAGA claim fails, however, because it is wholly derivative of other claims which, as discussed above, fail or are preempted and must be dismissed. *Price*, 192 Cal. App. 4th at 1147 ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Further, Plaintiffs' PAGA claims based on Labor Code Sections 204 and 210 fail for the additional reason that Plaintiffs failed to exhaust these claims and because the SAC contains no factual allegations regarding these claims.

### 1. Plaintiffs' PAGA claims must be dismissed when the underlying claim is dismissed, and Wage Orders cannot be directly enforced through the PAGA

All of Plaintiffs' PAGA claims should be dismissed because they are derivative of Plaintiffs' other claims which, as discussed above, are subject to dismissal. Where an underlying Labor Code claim fails, the wholly derivate PAGA claim also fails.

*Bush v. Vaco Tech. Servs., LLC*, 2018 WL 2047807, at *12 (N.D. Cal. May 2, 2018) (granting motion to dismiss PAGA claim that was derivative of dismissed Labor Code claim); *Hall,* 146 F. Supp. 3d at 1204 (where a PAGA claim is premised on a preempted Labor Code provision the PAGA claim "is derivative of those claims, and is preempted for the same reasons they are preempted."). Here, Plaintiffs' PAGA claims are merely derivative of the LWO and vacation pay claims asserted in other counts of the SAC. (SAC ¶¶ 70-75). Indeed, Plaintiffs' SAC asserts no independent facts in the PAGA cause of action to support the listed alleged PAGA violations. Thus, Plaintiffs' PAGA claim fails and/or is preempted for the same reasons the first and second causes of action fail and/or are preempted and should be dismissed. *See Jaco*, 2019 WL 1438069, at * 6; *Hall*, 146 F. Supp. 3d at 1204.

Plaintiffs' PAGA claim also attempts to shoehorn in an additional claim for failure to pay wages under the LWO by seeking penalties for alleged violations of Labor Code sections 223 and 225.5, which prohibit an employer from secretly paying a lower wage than required by a statute or contract.[6] (SAC ¶¶ 73-74). However, these claims fail and are preempted because the underlying LWO claims fail and are preempted. *See Jaco*, 2019 WL 1438069, at *6; *Hall*, 146 F. Supp. 3d at 1204.

Moreover, as an additional basis for dismissal of Plaintiffs' PAGA claim based on the Wage Order, "the PAGA does not create any private right of action to directly enforce a wage order." *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1132 (2012).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

---

[6] Plaintiffs cannot seek PAGA penalties for an alleged violation of the LWO because PAGA applies only to violations of the Labor Code. Cal. Labor Code § 2699.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

   **2.    Plaintiffs' PAGA claim as to Labor Code Sections 204 and 210**
   **fail because they did not exhaust those claims and make no**
   **factual allegations relating to these statutes in the SAC**

   **a.    Plaintiff provided insufficient PAGA notice as to Labor**
   **Code Sections 204 and 210**

   Before bringing a PAGA claim, Plaintiffs must first "give written notice [to the LWDA and employer] of the specific provisions of this code alleged to have been violated, *including the facts and theories to support the alleged violation*."  Cal. Labor Code §§ 2699.3 and 2699.5 (emphasis added). Failure to provide notice is a basis for dismissal pursuant to Fed. R. Civ. Proc. 12(b)(6).  *Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1193 (E.D. Cal. 2017); *Shann v. Durham Sch. Servs., L.P.*, 182 F. Supp. 3d 1044, 1047 (C.D. Cal. 2016).  Here, Plaintiffs listed California Labor Code sections 204 (biweekly pay) and 210 (penalties for Section 204) in their second notice letter, but did not provide any facts about the frequency of their pay or otherwise specifically allege a basis for their section 204 claim.  *See* October 22, 2020 PAGA Notice, attached at RJN Ex. G.  This failure to provide factual allegations constitutes a failure to exhaust these claims and requires dismissal of Plaintiffs' PAGA claims under Labor Code sections 204 and 210.  *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011)(affirming dismissal of PAGA claims "because neither [notice] letter contains any factual allegations whatsoever, they cannot constitute adequate notice for purposes of PAGA").

   **b.    Plaintiffs fail to state a claim as to Labor Code Sections**
   **204 and 210 because their SAC contains no factual**
   **allegations relating to these statutes**

   Plaintiffs' SAC also contains no factual allegations relating to violations of Labor Code sections 204 and 210.  These statutes are referenced solely as part of a laundry list of statutes in the PAGA cause of action.  In contrast, to avoid dismissal, a "complaint must provide sufficient allegations of underlying facts to give fair notice

1    and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d

2    1202, 1216 (9th Cir. 2011). Mere reference to the statutory sections, without any

3    factual allegations, do not meet "a plaintiff's obligation to provide the grounds of his

4    entitlement to relief." *Bell Atl. Corp.*, 550 U.S. at 554–56.  Plaintiff's PAGA claims

5    as to these Labor Code provisions should be dismissed.

6    **IV.**    <u>**CONCLUSION**</u>

7        For the foregoing reasons, Defendant respectfully requests that the Court

8    dismiss Plaintiffs' SAC, and each claim therein, with prejudice.  Plaintiff already has

9    amended his Complaint twice and not further amendment should be allowed.  In any

10    event, as discussed above, amendment would be futile.

11    DATED:  March 3, 2021            HUNTON ANDREWS KURTH LLP

12

13                      By: <u>*/s/Emily Burkhardt Vicente*</u>

14                        Emily Burkhardt Vicente

15                        D. Andrew Quigley

16                        Veronica A. Torrejón

17                     Attorneys for Defendant

                      HOST INTERNATIONAL, INC.

18

19

20

21

22

23

24

25

26

27

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT HOST INTERNATIONAL, INC.'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT