TEUKOLSKY LAW, APC
Lauren Teukolsky [SBN 211381]
lauren@teuklaw.com
201 S. Lake Avenue, Suite 305
Pasadena, CA 91101
Telephone: (626) 522-8982
Facsimile: (626) 522-8983

GILBERT & SACKMAN, A LAW CORP.
Joshua F. Young [SBN 232995]
jyoung@gslaw.org
3699 Wilshire Boulevard, Suite 1200
Los Angeles, CA 90010-2732
Telephone: (323) 938-3000
Facsimile: (323) 937-9139

Attorneys for Plaintiffs
(Add'l counsel on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DEBRA LEWIS and MARLENE
MENDOZA,

          Plaintiffs,

v.

HOST INTERNATIONAL, INC. and
DOES 1 through 20, inclusive,

          Defendants.

Case No.  2:21-cv-00075 JAK (SKx)

[*Honorable John A. Kronstadt*]

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS THE SECOND AMENDED
COMPLAINT PURSUANT TO RULE
12(B)(6)**

Date:        August 16, 2021
Time:        8:30 a.m.
Courtroom:   10B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Additional Counsel for Plaintiffs:

UNITE HERE LOCAL 11
Jeremy Blasi [SBN 298148]
jblasi@unitehere11.org
464 Lucas Ave. #201
Los Angeles, CA 90017
Telephone: (213) 481-8530 x 233
Facsimile: (213) 481-0352

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................. 1

II.  FACTS ................................................................................................ 2

    A. Plaintiffs Worked for Host for More than 30 Years
       Before Termination .................................................................. 2

    B. Host Operates Under a City Contract that Requires
       LWO Compliance ................................................................... 2

    C. None of Plaintiffs' Claims Depends on the CBA ............................ 2

    D. The 2016 LWO Requires Employers to Apply for
       an LWO Exemption ................................................................ 3

    E. The 2018 LWO Requires Airport Employers to Pay LWO Wages,
       Regardless of Any CBA Exemption ................................................ 3

    F. Host Failed to Pay Its Airport Employees the Required
       LWO Rates ............................................................................ 5

    G. Host Laid Off Plaintiffs But Failed to Pay Them Final
       Wages Owed .......................................................................... 5

III.  LEGAL ARGUMENT ........................................................................ 6

    A. Legal Standards Governing Rule 12(b)(6) Motions ......................... 6

    B. The Court May Not Dismiss the LWO Claim ................................. 6

       1. Host Failed to Receive an LWO Exemption from the City .......... 6

       2. The CBA's 2015 Exemption Does Not Waive
          the 2018 LWO Rates ...................................................... 7

       3. Alternatively, Host was Required to Pay the 2018 LWO Rates
          After the CBA Expired and was "Open for Negotiation" ........... 9

       4. Plaintiffs' LWO Claim is Not Subject to LMRA Preemption .... 10

       5. *Garmon* Preemption Does not Apply Where an Employer

i

Unilaterally Raises Wages to Comply
with a Minimum Wage Law ....................................................... 13

C. Plaintiffs' Vacation Claim Is Based on Labor Code § 227.3,
Not the CBA ................................................................................ 17

1. The CBA Does Not Waive the Provisions
of Labor Code § 227.3 .................................................. 17

2. Plaintiffs' Vacation Time Claim is Not Preempted
by Section 301 ............................................................... 19

D. Derivative Claims ....................................................................... 21

E. The Court Should Not Dismiss the
Waiting Time Penalty Claim ....................................................... 21

F. The Court Should Not Dismiss Plaintiffs'
Wage Statement Claim ................................................................ 23

G. UCL Claim .................................................................................. 24

H. PAGA Violations ......................................................................... 24

IV.    Conclusion ............................................................................................ 25

# **TABLE OF AUTHORITIES**

**Federal Cases and NLRB Decisions**

*Aaron Bros. Co., a Div. of Chromalloy Am. Corp. v. N.L.R.B.,*
 661 F.2d 750 (9th Cir. 1981) .......................................................................16

*Allis-Chalmers Corp. v. Lueck,*
 471 U.S. 202 (1985) ..................................................................................11

*Alondra Nursing Home & Convalescent Hosp.,*
 242 NLRB 595 (1979), *enf'd* 618 F.2d 115 (9th Cir. 1980) ..............15, 16

*Alonzo v. Maximus, Inc.,*
 832 F. Supp. 2d 1122 (C.D. Cal. 2011).....................................................22

*Anderson v. Angelone,*
 86 F.3d 932 (9th Cir. 1996) ...........................................................................6

*Associated Builders & Contractors, So. Cal. v. Nunn,*
 356 F.3d 979 (9th Cir. 2004) ......................................................................14

*Burnside v. Kiewit Pacific Corp.,*
 491 F.3d 1053 (9th Cir. 2007) ...........................................................11, 20

*Caterpillar Inc. v. Williams,*
 482 U.S. 386 (1987) ..................................................................................11

*Chissie v. WinCo Foods, LLC,*
 2012 WL 487652 (E.D. Cal. Feb. 14, 2012) ...........................................21

*Duley v. Centerra Group, LLC,*
 2020 WL 6526371 (C.D. Cal. August 27, 2020) ....................................22

*Fort Halifax Packing co. v. Coyne,*
 482 U.S. 1 (1987) ......................................................................................14

*Fortuna Enterprises, L.P. v. City of Los Angeles,*
 673 F.Supp.2d 1000 (C.D. Cal. 2008).....................................................14

*Hicks v. Ralphs Grocery Co.,*
  2013 WL 12081095 (C.D. Cal. Oct. 8, 2013) .........................................20

*Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac.*
*Chapter of Associated Builders & Contractors, Inc.,*
  801 F.3d 950 (9th Cir. 2015) ...................................................................13

*Iljas v. Ripley Ent. Inc.,*
  403 F.Supp.3d 793 (N.D. Cal. 2019).......................................................17

*Int'l Longshoremen's Ass'n, AFL-CIO v. Davis,*
  476 U.S. 380 (1986) .................................................................................13

*Jaco v. Winco Holdings, Inc.,*
  2019 WL 1438069 (E.D. Cal. Mar. 31, 2019)............................ 18, 19, 21

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018) ...................................................................10

*King Radio Corp., Inc.,*
  172 NLRB 1051 (1968) ............................................................................15

*Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.,*
  540 F.3d 1072 (9th Cir. 2008) .................................................................16

*Long Island Day Care Servs.,*
  303 NLRB 112 (1991) ..............................................................................16

*Markle Mg. Co.,*
  239 NLRB 1353 (1979) ............................................................................16

*McCray v. Marriott Hotel Servs., Inc.,*
  902 F.3d 1005 (9th Cir. 2018)..................................................................12

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
  521 F.3d 1097 (9th Cir. 2008) ...................................................................6

*Metropolitan Life Ins. Co. v. Massachusetts,*
  471 U.S. 724 (1985) ..........................................................................13, 14

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT PURSUANT TO RULE 12(B)(6)

*Murphy Oil USA,*
   286 NLRB 1039 (1987) ............................................................22

*Nat'l Council of La Raza v. Cegavske,*
   800 F.3d 1032 (9th Cir. 2015) ...................................................7

*Powell v. Walmart Inc.,*
   2021 WL 369550 (S.D. Cal. February 3, 2021) ......................22

*Reyes v. CVS Pharmacy Inc.,*
   2014 WL 584317 (E.D. Cal. Feb. 12, 2014) ...........................20

*San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon,*
   359 U.S. 236 (1959) .................................................................13

*Sizemore v. Pac. Gas & Elec. Ret. Plan,*
   939 F.Supp.2d 987 (N.D. Cal. 2013) .........................................2

*Southern Transport, Inc.,*
   145 NLRB 615 (1963) ..............................................................15

*Standard Candy Co.,*
   147 NLRB 1070 (1964) ............................................................15

*Tennison v. Hub Grp. Trucking, Inc.,*
   2020 WL 7714702 (C.D. Cal. Dec. 28, 2020) ...........................6

*Viceroy Gold v. Aubry,*
   75 F.3d 482 (1996) ...................................................................14

*Williams v. Cty. of Alameda,*
   26 F.Supp.3d 925 (N.D. Cal. 2014) ...........................................7

*Yuckming Chiu v. Citrix Systems, Inc.,*
   2011 WL 6018278 (C.D. Cal. Nov. 23, 2011) ........................21

//
//

## California Cases

*Amaral v. Cintas Corp. No. 2,*
    163 Cal.App.4th 1157 (2008) ......................................................... *passim*

*Choate v. Celite Corp.,*
    215 Cal.App.4th 1460 (2013) ......................................................... *passim*

*Cortez v. Purolator Air Filtration Prod. Co.,*
    23 Cal.4th 163 (2000) ...........................................................................24

*Diaz v. Grill Concepts Servs., Inc.,*
    23 Cal.App.5th 859 (2018) ...............................................................22, 23

*Maldonado v. Epsilon Plastics, Inc.,*
    22 Cal.App.5th 1308 (2018) ...................................................................23

*Minnick v. Auto. Creations, Inc.,*
    13 Cal.App.5th 1000 (2017) ...................................................................18

*Murphy v. Kenneth Cole Productions, Inc.,*
    40 Cal.4th 1094 (2007) ...........................................................................8

*Naranjo v. Spectrum Sec. Servs., Inc.,*
    40 Cal.App.5th 444 (2019), *review granted,*
    455 P.3d 704 (Cal. Jan. 2, 2020) ...........................................................23

*Raines v. Coastal Pac. Food Distributors, Inc.,*
    23 Cal.App.5th 667 (2018) .....................................................................24

## California Statutes, Rules and Regulations

Cal. Labor Code § 201 ..............................................................................1, 5

Cal. Labor Code § 226 ............................................................................23, 24

Cal. Labor Code § 223 ................................................................................24

Cal. Labor Code § 225.5 .............................................................................24

Cal. Labor Code § 204 ............................................................................24, 25

Cal. Labor Code § 210 ............................................................................................25

Cal. Labor Code § 227.3 .....................................................................................1, 17

8 C.C.R. § 13520(a) ...............................................................................................22

# I.  INTRODUCTION

Plaintiffs worked at LAX in restaurants operated by Host for more than 30 years. Host operates at LAX under contracts with the City of Los Angeles ("City") that require it to comply with the Los Angeles Living Wage Ordinance ("LWO").  In October 2019, several employees complained to the City that Host paid them below the LWO minimum wage.  *See* Pl. Request for Judicial Notice ("Pl. RJN") Exh. 8.  The City issued a "Notice to Correct" in January 2020, finding that Host violated the LWO.  Pl. RJN Exh. 9.

In March-April 2020, Host laid off hundreds of LAX employees, triggering its obligation under Labor Code § 201 to "immediately" pay all wages due.  Yet Host failed to pay Plaintiffs any LWO back wages or accrued vacation time.  Instead, Host called the layoff a "furlough," even though that term does excuse compliance with the Labor Code. By October 2020, when Plaintiffs filed their complaint, Host still had not paid them.

Through this motion, Host has thrown a bowl of spaghetti against the wall to see if anything will stick.  Host argues that the CBA exempts it from LWO compliance even though the City amended the LWO in 2018 to prohibit airport employers from paying less than the LWO wage regardless of any exemption.  And, the CBA expired on September 30, 2018, so any exemption ended then.  Host argues that the LMRA preempts Plaintiffs' claims even though no claim arises from the CBA or requires interpretation of its terms. Host argues that the LWO claim is *Garmon* preempted even though the NLRB has never found a violation where an employer raises wages to comply with a legal mandate like the LWO.  Host argues that the union waived employees' anti-forfeiture rights under Labor Code § 227.3 even though the CBA contains no "clear and unmistakable" waiver. Host argues that Plaintiffs' waiting time penalties claim should be dismissed because it acted in "good faith," even though this a factual defense that cannot be resolved on a motion to dismiss, particularly in light of the City's conclusion in January 2020 that Host violated the LWO.  In short, none of Host's arguments has merit.  The Court should deny its motion in its entirety.

## II.    FACTS

### A.    Plaintiffs Worked for Host for More than 30 Years Before Termination

Host operates multiple establishments at LAX pursuant to contracts with the City. SAC ¶18.  Plaintiffs Debra Lewis and Marlene Mendoza worked for Host at LAX for more than 30 years before Host terminated them in March-April 2020.  *Id*. ¶¶9-10.  *Id*. ¶10. Most recently, they were servers at Point the Way Café in Terminal 6.  *Id*. ¶¶9-10.

### B.    Host Operates Under a City Contract that Requires LWO Compliance

In return for the significant profits gained from City contracts allowing Host to operate at LAX, Host must comply with the LWO's requirements to pay its employees a minimum living wage.  *Id*.  The LWO was enacted to address the low wages typically paid to service employees who provide essential City services, leaving employees with "insufficient resources to afford life in Los Angeles." SAC ¶3 (quoting L.A.A.C. § 10.37).

### C.    None of Plaintiffs' Claims Depends on the CBA

Even though the SAC does not mention a union, Plaintiffs do not dispute that they are members of UNITE HERE Local 11 ("Union"). They do not dispute the authenticity of the CBA that Host submitted through a Request for Judicial Notice as Exhibit A. However, because none of Plaintiffs claims rely on the CBA, and it is referenced only a single time in the SAC (at ¶48), the Court need not take judicial notice of it.  *Sizemore v. Pac. Gas & Elec. Ret. Plan*, 939 F. Supp. 2d 987, 989 (N.D. Cal. 2013) ("Because . . . this order finds that plaintiff's claim does not rely on the collective bargaining agreement, judicial notice of the collective bargaining agreement is denied.").

Plaintiffs do not dispute that the CBA contains a provision purporting to exempt Host from LWO compliance, although, as explained below, they vigorously dispute Host's assertion that the CBA's exemption was effective as of January 20, 2018, when the City amended the LWO to require that all airport workers be paid at least the LWO wage rates, regardless of any CBA exemption.  They do not dispute that the CBA contains provisions for the accrual of vacation time, although, as explained below, they vigorously dispute Host's assertion that the CBA waives any rights under Labor Code § 227.3.

**D.      The 2016 LWO Requires Employers to Apply for an LWO Exemption**

The City originally passed the LWO in 1997.  Pl RJN Exh. 1.  The 1997 LWO contained a "supersession provision," which stated: "Parties subject to this article may by collective bargaining agreement provide that such agreement shall supersede the requirements of this article."  *Id*. at §10.37.11.  In 1999, the supersession provision was renumbered to 10.37.12, but otherwise stayed the same until 2016.  Pl. RJN Exh. 2.

In 2016, the City added a requirement that any employer seeking an LWO exemption on the basis of a CBA had to submit the "required documentation" to the Bureau of Contract Administration ("BCA"), the City agency tasked with LWO enforcement. [1]  Pl. RJN Exh. 3 at § 10.37.12.  The 2016 supersession clause stated:

> Parties subject to this article may by collective bargaining agreement provide that such agreement shall supersede the requirements of this article. **An Employer seeking supersession must submit the required documentation to the [BCA].**"

*Id*. at § 10.37.12 (2016) (amended language in bold).

The City uses a form entitled "LWO Exemption Application," which employers must use to apply for an LWO exemption.  Pl RJN Exh. 7.  The form states: "Los Angeles Administrative Code section 10.37, the Living Wage Ordinance (LWO), presumes all City contractors are subject to the LWO unless this exemption application is approved." *Id*.  In its motion, Host quotes the 2016 supersession provision, but conveniently omits the bolded language.  MTD at 6:24-26.  Host provides no evidence that it submitted the "required documentation" to the BCA to avail itself of the LWO exemption.

**E.      The 2018 LWO Requires Airport Employers to Pay LWO Wages, Regardless of Any CBA Exemption**

In 2017, the City amended the LWO, with changes that became effective on January 20, 2018.  The 2018 LWO created a new section for "Airport Employee Wages" and set new rates applicable to airport employees like Plaintiffs.  *Compare* Pl. RJN Exh.

---

[1] The LWO is administered by a "Designated Administrative Agency (DAA)," which is the BCA.  When the LWO says "DAA," it means the BCA.  *See* L.A.A.C. § 10.37.1(h).

3 (2016 LWO) §10.37.2(a) *with* Pl. RJN Exh. 4 (2018 LWO) § 10.37.2(a).

The 2018 LWO also significantly changed the supersession provision to state:

The requirements of this article may be superseded by a [CBA] if expressly stated in the agreement. This provision applies to any [CBA] that expires or is open for negotiation of compensation terms after the effective date of this ordinance. Any [CBA] that purports to supersede any requirement of this article shall be submitted by the Employer to the [Bureau of Contract Administration].

**(a) A [CBA] may expressly supersede the requirements of this article with respect to Employees or Employers servicing the Airport only when an Employee is paid a wage not less than the applicable wage rate in Section 10.37.2 (a)(2)(i).**

(b) A [CBA] may expressly supersede the requirements of this article with respect to Employees of Airline Food Caterers only when an Employee of the Airline Food Caterer is paid a total economic package no less than the applicable living wage in Section 10.37.2(a)(2)(ii).

Pl. RJN Exh. 4 (emphasis added).  This version is currently in effect today.

By its plain language, the 2018 supersession provision only permits LWO exemptions in CBAs that expire or are open for negotiation after the effective date of January 20, 2018. The 2018 LWO continues to require that an employer seeking an exemption must submit the required documentation to the City. The LWO's implementing rules and regulations, updated in March 2018, reiterate this requirement. Pl. RJN Exh. 6 ("An Employer applying for this exemption shall submit a copy of the CBA.").

The 2018 LWO also imposes a new requirement, in bold above, that under no circumstances may employers pay airport employees less than the new LWO wage rates specified in Section 10.37.2(a)(2)(1), regardless of any CBA exemption.  So, for example, while an airport employer could negotiate with a union to be exempt from the LWO's requirements to provide employees with compensated time off (set forth in Section 10.37.2(b)), under no circumstances can an employer be exempt from the LWO's wage

requirements for airport employees.  An airport employer could similarly negotiate with a union to be exempt from the LWO's requirements to pay healthcare benefits "so long as the airline pays its employees the applicable wage rates mandated in the LWO for employees servicing the airport." Pl. RJN Exh. 5 (City Attorney Report dated 1/31/18).

The May 2019 rules and regulations implementing the LWO confirm this reading:

> **CBA Exemption for Employers servicing the Airport** – LAAC Section 10.37.12(a): In addition to the above requirements [e.g., that employers seeking an exemption must submit the CBA to the BCA], Employers servicing the Airport may only be exempt if its Employees are paid a wage not less than the applicable wage rate in Section 10.37.2(a)(2)(i). Supporting documents such as payroll must be provided to BCA.

Pl. RJN Exh. 6. Again, while Host cites this regulation in its motion, MTD at 8, it fails to discuss the foregoing language, which appears in **bold** at the bottom of the regulation.

### F.     Host Failed to Pay Its Airport Employees the Required LWO Rates

Between January 20, 2018 and June 30, 2018, Host paid Plaintiffs $12.00 per hour even though the LWO required they be paid no less than $12.08 per hour.  SAC ¶¶22-23. Between July 1, 2018, and July 1, 2019, Host paid Plaintiffs $13.25 per hour even though the LWO required they be paid no less than $13.75 per hour.  SAC ¶24.  In October 2019, several Host employees, including Plaintiffs, filed complaints with the BCA that they had been paid $13.25 instead of the required $13.75 from July 2018 to July 2019.  SAC ¶4; Pl. RJN Exh. 8.  Host nonetheless refused to pay employees back wages, supporting Plaintiffs' allegation that Host's failure to comply with the LWO is "willful."  SAC ¶25.

### G.     Host Laid Off Plaintiffs But Failed to Pay Them Final Wages Owed

In March and April 2020, Host laid off hundreds of LAX employees, including Plaintiffs.  SAC ¶26.  At the time, Plaintiffs and their similarly-situated coworkers had accrued vacation time pursuant to the provisions of the CBA.  SAC ¶48.  Labor Code § 201 requires employers to pay all earned wages to discharged employees "immediately." Lab. Code § 201 ("If an employer discharges an employee, the wages earned and unpaid

at the time of discharge are due and payable immediately."). Labor Code § 227.3 similarly requires employers to pay out accrued vacation time to all employees who are discharged. Despite these requirements, Host did not "immediately" pay its laid-off employees for accrued vacation or LWO back wages. When this lawsuit was filed on October 13, 2020, Plaintiffs still had not received the final wages they were owed.  SAC ¶27.

Although Host called the layoffs a "furlough," use of this term does not permit employers to avoid their obligations to pay final wages in a timely manner.  Host required laid-off employees to return their security badges; did not provide laid off employees with a return-to-work date; and failed to put them back to work in a timely manner. SAC ¶28. To date, one year after the layoff, Plaintiffs still have not returned to work.

## III.    LEGAL ARGUMENT

### A.    Legal Standards Governing Rule 12(b)(6) Motions

A complaint must give the defendant fair notice of the claims.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  On a motion to dismiss, the complaint's allegations are deemed true and are construed in the light most favorable to the plaintiff.  *Tennison v. Hub Grp. Trucking, Inc.*, 2020 WL 7714702, at *6 (C.D. Cal. Dec. 28, 2020).  If a motion to dismiss is granted, the court should give leave to amend if there is any set of facts to support a legal theory.  *Id.*  When considering a motion to dismiss, a court is permitted to rely on matters "properly subject to judicial notice or by exhibit." *Id.*  However, "[a] motion to dismiss. . . must be treated as a motion for summary judgment . . . if either party . . . submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials." *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### B.    The Court May Not Dismiss the LWO Claim

#### 1.    Host Failed to Receive an LWO Exemption from the City

Host argues that the CBA exempts Host from complying with the LWO.  MTD at 6-7.  This argument fails because Host did not properly seek or receive an exemption from the City.  As set forth above, the City amended the LWO in 2016 to require employers to

file an LWO exemption request along with the CBA.  Pl. RJN Exh. 3 at § 10.37.12 ("An Employer seeking supersession must submit the required documentation to the [BCA].").  This requirement was similarly included when the LWO was amended in 2018.  Pl. RJN Exh. 4 at § 10.37.12 ("Any [CBA] that purports to supersede any requirement of this article shall be submitted by the Employer to the [BCA]".).

Despite these unambiguous requirements, Host has not submitted any evidence that it ever applied for an LWO exemption.  The SAC certainly does not allege that Host properly applied for an LWO exemption.  And, because Host's compliance with the exemption requirement would require the Court's evaluation of evidence beyond the SAC, the Court may not resolve this issue on a motion to dismiss.  *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 935 (N.D. Cal. 2014) (declining to consider outside evidence on a 12(b)(6) motion "[g]iven the relatively early stage" of the litigation).

Plaintiffs intend to propound discovery to determine whether Host received an LWO exemption.  If not, Plaintiffs will likely be entitled to summary adjudication because the wage amounts Host paid are undisputed.  If the Court deems it necessary, Plaintiffs can amend the complaint to include allegations that Host failed to receive an exemption.  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile.").

### 2. The CBA's 2015 Exemption Does Not Waive the 2018 LWO Rates

Even if Host obtained an exemption, the exemption contained in the CBA that Host negotiated in 2015 is ineffective to waive the 2018 LWO rates.  Host urges the Court to interpret the 2018 LWO to mean that employers with CBA exemptions were not immediately required to comply with the new wage rates established for airport employees.  Instead, Host argues, the 2016 LWO continues to apply to this day because the Union agreed to an extension of the CBA.  MTD at 7-10.  The Court should reject this interpretation because it is contrary to the plain language of the 2018 LWO.

Courts interpret ordinances by the "same rules" applicable to statutes.  *Amaral v.*

-7-

*Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1183 (2008) (applying rules of statutory construction to Hayward living wage ordinance) (citation omitted). "When faced with a question of statutory interpretation, we look first to the language of the statute. In interpreting that language, we strive to give effect and significance to every word and phrase." *Id.* at 1183–84 (citations and internal quotation marks omitted). The California Supreme Court has held that "statutes governing conditions of employment are to be construed broadly in favor of protecting employees." *Id.* at 1184 (citing *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1103 (2007)).

Here, the 2018 LWO supersession provision states that it "applies to any [CBA] that expires or is open for negotiation of compensation terms after the effective date of this ordinance." Pl. RJN Exh. 4 at § 10.37.12. On its face, Section 10.37.12 provides that it applies to all extant CBAs (i.e., CBAs that "expire after" January 20, 2018), as well as CBAs that will be open for negotiation after January 20, 2018. Section 10.37.12 thus provides that employers *will not be exempt* from the LWO unless and until they negotiate an exemption in a CBA that expires or is open for negotiation after January 20, 2018. This means that a CBA exemption predating January 20, 2018, is inoperative after January 20, 2018, until it is renegotiated in light of the new requirements set by the 2018 LWO.

Under the 2018 LWO, non-airport employers may continue to include LWO exemptions in CBAs so long as they submit the correct paperwork to the BCA. However, per subsection (a) of the 2018 LWO supersession provision, airport employers like Host may only include LWO exemptions if the employer pays airport employees at the new airport minimum wage rates established in Section 10.37.2(a)(2)(i). This is a material change from the 2016 LWO, which permitted a CBA exemption regardless of the wages that were paid. Section 10.37.12 of the 2018 LWO does *not* say that the terms of the older LWO continue to apply to some CBAs until they expire or are renegotiated.

The LWO's implementing rules confirm Plaintiffs' reading. Nowhere do the implementing rules state that airport employers are required to pay their employees the LWO minimum wage only *after* the date that a current CBA expires. Instead, the

-8-

implementing rules state: "Employers servicing the Airport may only be exempt if its Employees are paid a wage not less than the applicable wage rate in Section 10.37.2(a)(2)(i)." Pl. RJN Exh. 6. The rule is consistent with the LWO's plain language.

Under Section 10.37.12, the CBA in this case both "expire[d] after" January 20, 2018 and was "open for negotiation" after January 20, 2018, and, therefore, the supersession provision in the 2018 LWO applies to it.[2] Because Host was required to comply with the 2018 LWO rates as of the effective date of January 20, 2018, and Plaintiffs allege that Host failed to pay the 2018 LWO rates from January 20, 2018 to July 1, 2019, SAC ¶¶23-24, the Court should deny Host's motion to dismiss the LWO claim.

### 3.   Alternatively, Host was Required to Pay the 2018 LWO Rates After the CBA Expired and was "Open for Negotiation"

Even if the Court does not agree that Host was required to comply with the 2018 LWO immediately, the Court should alternatively conclude that Host was required to comply after the CBA expired on September 30, 2018. At that point, it cannot seriously be disputed that the CBA expired and was "open for negotiation of compensation terms" as that phrase is used in the 2018 LWO supersession provision. Pl. RJN Exh. 4 at § 10.37.12. Indeed, Host and the Union have been negotiating the terms of a new CBA, including compensation terms, since September 30, 2018. Declaration of Robin Rodriguez ¶3. Plaintiffs can easily amend their complaint to add these allegations.

Host argues that the CBA never "expired" because the parties agreed to extend the terms of the 2015 CBA while they negotiated a new CBA. MTD at 8-9. The Court should reject this argument. First, it would be improper for the Court to rely on the extension agreement because the SAC does not reference it, and Plaintiffs dispute its effect on their

---

[2] Changes in the law requiring employers—even those subject to a CBA—to adopt new wage rates are common. "Minimum wage statutes invariably carry an effective date after which compliance is required." *Huffman v. Pacific Gateway Concessions LLC*, 2019 WL 2563133 at *7 (N.D. Cal. 2019); *Standard Candy Co.*, 147 NLRB 1070, 1072 (1964) (increase to employee wage rates was required under the Fair Labor Standards Act even though the CBA was in "full force and effect" at the time).

LWO claim.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.").

Second, it cannot seriously be disputed that the 2015 CBA expired on September 30, 2018, and has been "open for negotiation of compensation terms" since then. Significantly, the BCA, which is charged with LWO enforcement, interprets the 2018 LWO's supersession provision in precisely this manner.  As the SAC alleges, multiple employees complained that Host violated the LWO in October 2019. SAC ¶4.  The BCA investigated and issued a "Notice to Correct" dated January 7, 2020, concluding that Host was required to pay the LWO airport rates once the 2015 CBA expired on September 30, 2018, despite the extension.  *See* Pl. RJN Exh. 9.  The BCA stated:

> HMS Host is a party to a Collective Bargaining Agreement (CBA) with Unite HERE Local 11 . . . [which] has an expiration date of September 30, 2018 with a one-month extension agreement ending on October 31, 2018. After the expiration date, the agreement is in effect on a month to month basis while the two parties negotiate a new CBA. . . **Therefore, HMS Host was required to comply with the LWO for the time period after their agreement's expiration date and throughout the time that the CBA has been open for negotiation of compensation terms.**

Pl. RJN Exh. 9 (emphasis added).  The BCA ordered Host to pay LWO back wages.  *Id*. As of October 13, 2020 Host still had not paid back wages to Plaintiffs.  SAC ¶27. Accordingly, at a minimum, the Court should conclude that Host was required to pay the 2018 LWO airport wage rates as of October 1, 2018, when the CBA between Host and the Union expired and was "open for negotiation." Again, should the Court deem it necessary, Plaintiffs can easily amend their complaint to include these factual allegations.

### 4.  Plaintiffs' LWO Claim is Not Subject to LMRA Preemption

Host argues that Section 301 of the LMRA preempts the LWO claim because the

-10-

claim arises from the CBA, or requires CBA interpretation.  MTD at 11.  This argument is meritless.  "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not preempted by § 301." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393–94 (1987).

The Ninth Circuit uses a two-part test to determine whether Section 301 preemption applies.  *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  First, the court must conduct an inquiry into whether the asserted cause of action "involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id.* (citation omitted).  Second, the court must determine whether the claim is "substantially dependent" on the terms of a CBA.  If the court can resolve the claim merely by "looking to" the CBA, rather than "interpreting" it, the claim will not be preempted.  *Id.* at 1060.

Plaintiffs' LWO claim is not preempted. First, the claimed right to be paid at the 2018 LWO wage rates arises not from the CBA, but from the LWO itself because the LWO establishes the minimum wage that must be paid at the airport.  *See* RJN Exh. 4 at § 10.37.2(a)(2)(i).  As in *Burnside,* the presence of an LWO provision allowing the parties to opt out through a CBA does not compel a different conclusion.  As set forth in Sections III.B.2-3, *supra*, the 2018 LWO permitted an opt out only if employees were paid at least the airport minimum wage, which they were not.  SAC ¶¶21-24.  Furthermore, if the CBA "purport[ed] to supersede" the requirements of the LWO, Host would have been required to submit it to the BCA, which Host does not claim it did. Accordingly, because the opt-out requirements were not met here, there is no need for the Court to consider the CBA.

Second, resolution of Plaintiffs' LWO claim does not depend on interpreting the CBA.  Although Host points to language in the CBA purporting to opt out of the LWO, any purported opt out was ineffective for the reasons set forth *supra* in Sections III.B.1-

3.  Moreover, the Ninth Circuit has squarely rejected the proposition advanced by Host that the existence of an opt-out provision in a CBA necessarily means that the court needs to interpret it.  In *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005 (9th Cir. 2018), the plaintiff alleged that his employer violated a San Jose ordinance by paying him $9/hour instead of the Ordinance's minimum wage of $10/hour.  As here, the San Jose ordinance allowed opt-outs under certain circumstances.  *Id*. at 1008.  As here, the CBA contained a provision purporting to opt out of the San Jose minimum wage ordinance, permitting employees to be paid $9/hour.  The Ninth Circuit rejected the employer's argument that Section 301 preempted the plaintiff's claims, first holding that the plaintiff's claims arose from the San Jose ordinance, not the CBA.  *Id*. at 1010.  The court further held that the presence of the opt-out provision in the CBA did not mean that the court would be required to interpret the CBA, reasoning:

> At bottom, this case is a matter of statutory interpretation. The primary task of the court deciding this case will be to determine whether the minimum wage established by the ordinance is waivable. If the court determines it can't be waived, then it's irrelevant whether the CBA contains a waiver. On the other hand, if the minimum wage is subject to waiver, the court will need only "look to" the CBA to determine whether it contains a valid waiver.

*Id*. at 1012-13.

There is no meaningful way to distinguish *McCray*.  At bottom, this case is a matter of statutory interpretation.  The court's "primary task" will be to determine whether the minimum wage for airport workers established by the 2018 LWO is waivable and, if so, under what conditions.  If the Court determines it can't be waived, or that the conditions precedent for a waiver have not been met, then it is irrelevant whether the CBA contains a waiver.  On the other hand, if the minimum wage is subject to waiver, the Court will need to determine whether the conditions for the waiver have been met, and need only "look to" the CBA to determine whether it contains a valid waiver.

**5.**  ***Garmon* Preemption Does not Apply Where an Employer Unilaterally Raises Wages to Comply with a Minimum Wage Law**

Host next argues that the LWO claim is *Garmon* preempted because Host would have been subject to an unfair labor practice charge had it unilaterally raised wages during the term of a CBA.  MTD at 12.  This argument has no merit either.

*Garmon* preemption is "focused mainly on protecting the NLRB's primary jurisdiction."  *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 801 F.3d 950, 959 (9th Cir. 2015).  To establish *Garmon* preemption, a party must show that the conduct at issue would be "arguably" protected or prohibited by the NLRA.  *Id.*; *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245 (1959); *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 394 (1986) ("As the *Garmon* line of cases directs, the pre-emption inquiry is whether the conduct at issue was arguably protected or prohibited by the NLRA.").

"Because *Garmon* preemption turns on what the NLRA actually or arguably requires (or prohibits)," the Ninth Circuit has held that courts should "look principally to the decisions of the NLRB to decide whether *Garmon* preemption applies."  *Idaho Bldg.*, 801 F.3d at 962; *Davis*, 476 U.S. at 395 (1986) ("If the word 'arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor.").

Before discussing NLRB decisions, it is important to note that courts have emphatically rejected the notion advanced by Host that the implementation of minimum labor standards undercuts collective bargaining, and is therefore subject to preemption.  Rather, courts have repeatedly affirmed the ability of the State to implement minimum labor standards, which serve as the "backdrop" for collective bargaining.

In *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), a Massachusetts statute required that minimum mental-health-care benefits be provided to residents insured under an employee healthcare plan.  *Id.* at 727.  Insurance companies

argued that the statute was preempted by the NLRA because it interfered with the collective bargaining process by requiring the parties to purchase certain benefits the parties may not have wished to purchase. *Id*. at 748. The Court rejected this argument, observing that state laws of general application which set minimum labor standards are not preempted, even if they affect the substantive terms of collective bargaining agreements subject to mandatory bargaining. This is because "[t]he NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." *Id.* at 753. Moreover, allowing preemption of minimum labor standards would deprive union members of rights enjoyed by nonunion members, which was neither intended nor desirable. *Id*. at 755.

In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), the Court again held that state laws establishing minimum labor standards—in this case, a Maine severance pay law—are not preempted by the NLRA. "When a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act." *Id.* at 21. Instead, "the establishment of labor standards falls within the traditional police power of the State" and does not interfere with the process of collective bargaining.

Here, as in *Metropolitan Life* and *Fort Halifax*, the LWO is "a valid and unexceptional exercise of the [State's] police power" not subject to preemption. *Id.* at 22; *see also Viceroy Gold v. Aubry*, 75 F.3d 482, 490 (1996) ("Because [California statutes setting rules for mineworkers] constitute a minimum employment standard and an opt-out provision, there is no *Garmon* preemption."); *Associated Builders & Contractors, So. Cal. v. Nunn*, 356 F.3d 979, 987-88 (9th Cir. 2004) (rejecting *Garmon* challenge based on allegation that state law "impermissibly inserts the state into the bargaining process"); *Fortuna Enterprises, L.P. v. City of Los Angeles*, 673 F. Supp. 2d 1000, 1004-06 (C.D. Cal. 2008) (city living wage ordinance not subject to *Garmon* preemption).

Host asserts that unilaterally raising Plaintiffs' wages to LWO rates would have

-14-

"arguably" subjected it to an unfair labor practice charge.  MTD at 12-13.  Host's argument fails as an initial matter because, contrary to Host's contention, the LWO claim does *not* depend on the assertion that Host was required unilaterally to raise Plaintiffs' wage rates, as Host *could have attempted* to comply with the LWO by bargaining with the Union or seeking the Union's consent to meet the LWO requirements.  Nothing in the NLRA would have precluded Host from asking the Union to raise wage rates to comply with the LWO, or from implementing wage increases had the Union agreed.

Moreover, the NLRB has repeatedly held that an employer does not commit an unfair labor practice when it makes unilateral changes to meet minimum labor standards, like the LWO, that leave no room for discretion in their application.  In *Standard Candy Co.*, 147 NLRB 1070 (1964), a union filed a charge against the employer for violating section 8(a)(5) by raising employee wages without first bargaining with the union.  *Id.* at 1071-72.  At the time the employer raised the wages, the CBA outlined specific procedures for the employer to set wage rates.  *Id.* at 1072.  Nonetheless, to comply with new FLSA provisions, the employer raised the pay rate for some employees in contravention of the specified procedures without first consulting the union.  *Id.*  The NLRB held that the employer did "not engage[] in any unfair labor practices" by increasing a group of employees' wages "to conform with the minimum wage requirements of FLSA."  *Id.* at 1073-74.  The NLRB further held that the employer was not required to notify the union before effectuating the wage increases.  *Id.* at 103.

The NLRB's jurisprudence on the issue is clear: an employer does *not* violate Section 8(a)(5) by increasing compensation to meet the requirements of a statutory minimum wage like the LWO.  *See Southern Transport, Inc.*, 145 NLRB 615, 618 (1963) (employer did not violate Section 8(a)(5) by unilaterally adopting wage increases to comply with the FLSA without notice to the union); *King Radio Corp., Inc.*, 172 NLRB 1051, 1058 (1968) (unilateral wage changes "other than any wage increases required by the amended Federal minimum wage law" violated the NLRA); *Alondra Nursing Home & Convalescent Hosp.*, 242 NLRB 595, 595 n.1 (1979), *enf'd* 618 F.2d 115 (9th Cir.

1980) (clarifying that Board order to void unilateral changes could not be construed to cancel "any portion of the increase in wages which is compelled by state minimum wage requirements"); *Markle Mfg. Co.*, 239 NLRB 1353, 1366 (1979) (employer "must increase employees' wages where there has been a change in the [FLSA] minimum wage" and implementing increase without bargaining did not violate NLRA); *Long Island Day Care Servs.*, 303 NLRB 112 (1991) (employer's unilateral cost-of-living increase to comply with HHS directive did not violate NLRA where employer "had no say over how much money would be awarded or how the funds would be allocated").

Here, the LWO is a minimum labor standard that leaves no room for discretion as to compliance. The 2018 LWO required Host to raise Plaintiffs' wages from $12.00 to $12.08 from January 20, 2018 to June 30, 2018, and from $13.25 to $13.75 from July 1, 2018 to July 1, 2019. SAC ¶¶23-24. Because the LWO affords an employer no discretion, and the NLRB has repeatedly held that employers do not violate the NLRA by raising minimum wages to comply with the law, there is no basis to find that Host's action in raising wages to comply with the LWO "arguably" violated the NLRA.

Host cites only two cases to support its argument. MTD at 13. The first is *Aaron Bros. Co., a Div. of Chromalloy Am. Corp. v. N.L.R.B.*, 661 F.2d 750, 752 (9th Cir. 1981). MTD at 13. However, Host conveniently omits crucial facts—to wit, the employer instituted a wage increase *as a part of the employer's own policy to annually adjust its employees' wages* without first bargaining with the union. *Id.* at 752. The employer was *not* instituting an increase to comply with a state law mandate, as would have been the case here had Host complied with the LWO. The second case is *Local Joint Exec. Bd. of Las Vegas v. N.L.R.B.*, 540 F.3d 1072 (9th Cir. 2008), but this case has no bearing because it does not involve an employer unilaterally changing wages to comply with a legal mandate. Instead, it holds that an employer violated the NLRA when it unilaterally ceased giving effect to a "dues-checkoff clause" in an expired CBA. *Id.* at 1076.

In short, Host has failed to cite any authority to support its claim that unilaterally raising Plaintiffs' wages to comply with the LWO even "arguably" would have violated

the NLRA.  The Court should reject its *Garmon* preemption claim.

### C.   Plaintiffs' Vacation Claim Is Based on Labor Code § 227.3, Not the CBA

#### 1.   The CBA Does Not Waive the Provisions of Labor Code § 227.3

Plaintiffs' vacation claim is straightforward: Under the CBA, they accrued vacation time.  Vacation time is considered "wages" that must be paid "immediately" upon termination.  When Host laid off Plaintiffs, it failed to pay them "immediately" for their vested vacation.  *See Iljas v. Ripley Ent. Inc.*, 403 F. Supp. 3d 793, 803 (N.D. Cal. 2019) (granting summary judgment to employee on waiting time penalties claim where employee was terminated on July 31 but not paid for vacation time until August 9).  As of the filing of the complaint, Host still had not paid Plaintiffs.  SAC ¶27.

Host argues that the Court should dismiss their vacation claim because the CBA contains a "clear and unmistakable" waiver of Plaintiffs' rights under Labor Code § 227.3. MTD at 14.  Nonsense.  The CBA contains no waiver.

The governing case is *Choate v. Celite Corp.*, 215 Cal. App. 4th 1460 (2013), which Host fails to cite.  In *Choate*, a CBA granted employees between one and five weeks of vacation annually.  *Id*. at 1463.  Each January, the employer calculated a yearly "vacation allotment" based on a formula.  The CBA provided that terminated employees were "to receive whatever vacation allotment is due them upon separation."  *Id*.  The plaintiffs were terminated in March 2008 and sued because the employer did not pay them for the vacation time they had accrued on a pro rata basis towards their January 2008 allotment.

The employer argued that the union waived plaintiffs' statutory rights under § 227.3 to the pro rata vacation time.  As evidence of waiver, the employer pointed to CBA provisions discussing the vacation pay that terminated employees were to receive, and limiting the pay to the "vacation allotment" for the year of termination.  *Id*. at 1464.  The court rejected the employer's argument, holding that that "section 227.3 requires any union waiver of its members' statutory right to payment under section 227.3 be made clearly and unmistakably."  *Id*. at 1465.  "To be clear and unmistakable, a waiver must do more than speak in '[b]road, general language.'  ***It must be specific, and mention either***

-17-

*the statutory protection being waived or, at a minimum, the statute itself.*"  *Id*. at 1467 (citations omitted) (emphasis added).   Even though the CBA contained numerous provisions discussing vacation, including "what vacation pay terminated employees are to receive," *id*. at 1464, because the CBA did not contain a "clear and unmistakable" waiver, the court permitted the plaintiffs to proceed with their statutory claims.

*Choate* controls here.  As in *Choate*, the CBA contains provisions for the accrual of vacation time. Def. RJN Exh. A at 17.  Section 6.1 says that employees who work for one year accrue one week of paid vacation; employees who work two years accrue two weeks.  *Id*.  Section 6.2 says that employees who work for 10 years accrue three weeks; employees who work for 15 or more years accrue four weeks.  *Id*.  Neither provision mentions § 227.3, or says that employees forfeit their vested vacation time on termination.

Section 6.3 is the only provision Host identifies to support its claim that the Union waived employees' statutory rights under § 227.3.  MTD at 16.  This provision states: "If an employee quits during the first year, he shall not receive any vacation pay, but if the employee is discharged during the first year and after six months of service, he shall receive pay for one-twelfth of the employee's vacation entitlement for each full calendar month worked during the vacation year in which the termination occurs."  Def. RJN Exh. A at 17.  Nothing in this provision says that employees terminated in their first year forfeit earned vacation.  Instead, this provision sets the rules for how such employees accrue vacation.  Employees who work less than six months accrue nothing.  Employees who work between six months and a year accrue vacation per a formula.  This provision is not inconsistent with the anti-forfeiture rights provided by § 227.3, and certainly doesn't constitute a waiver of statutory rights.  *See Minnick v. Auto. Creations, Inc.*, 13 Cal. App. 5th 1000 (2017) (employer policy stating that employees do not accrue any vacation in their first year of employment consistent with § 227.3).  Host cites no other provisions to support its waiver claim.  Nor could it, since the remaining vacation provisions say nothing about waiving statutory rights under § 227.3.

Host cites *Jaco v. Winco Holdings, Inc.*, 2019 WL 1438069 (E.D. Cal. Mar. 31,

-18-

2019), but that case is clearly distinguishable.  The *Jaco* court started from the proposition set forth in *Choate* that any waiver must be "clear and unmistakable," and that to be effective, the waiver must either cite § 227.3 itself or "mention the statutory protection being waived." *Id.*, at \*5.  The court found that even though the CBA did not cite § 227.3, it did "mention the statutory protection being waived" because it stated that "[v]acation earned but not taken ***will not be paid*** to employees terminated for gross misconduct." *Id*.  Because the CBA identified the statutory protection being waived, the court found a waiver.  Significantly, the *Jaco* court later certified the waiver question for interlocutory appeal based on a long line of California cases holding that the right to be paid for vested vacation—which are considered earned wages under California law—was an unwaivable statutory right, throwing into question whether a CBA waiver could ever be effective. *Jaco v. WinCo Holdings, Inc.*, 2019 WL 2615739, at \*3 (E.D. Cal. June 26, 2019).

However, even assuming a CBA waiver can be effective, the facts here are distinguishable.  Unlike *Jaco*, Section 6.3 does not "mention the statutory protection being waived."  At most, it says that employees who work less than six months do not accrue any vacation at all, and that employees who only work between six months and one year accrue a pro rata share of vacation based on how many months they have worked. It does not require an employee to forfeit any rights to accrued vacation, unlike like the "gross misconduct" provision in *Jaco*.

Even if the Court concludes that Section 6.3 contains an unmistakable waiver, the Court should permit Plaintiffs to amend their § 227.3 claim to exclude any employees who worked for Host for less than one year.  This would avoid the waiver problem altogether because Section 6.3 would not be implicated, and Host does not contend that the CBA waives § 227.3 rights for employees who work for Host for more than one year.

## 2.  Plaintiffs' Vacation Time Claim is Not Preempted by Section 301

Host argues that Plaintiffs' vacation claim is preempted by Section 301 because it is based on rights set out in the CBA or "substantially depends" on analysis of the CBA. MTD at 16-17.  This preemption argument is meritless.  With respect to the first prong,

Plaintiffs' vacation claim—that they are owed waiting time penalties based on Host's failure to pay out their vested vacation "immediately"—arises from the Labor Code, not the CBA.  While the CBA contains provisions for how employees earn and vest vacation, it does not contain provisions requiring employees to be paid their earned vacation wages immediately upon termination.  Instead, the right not to forfeit vested vacation but instead to be paid earned vacation immediately upon discharge is a right conferred by Labor Code §§ 201 and 227.3.  Because the asserted cause of action arises from state law and does not exist "solely as a result of the CBA," prong one is not met. *Burnside*, 491 F.3d at 1059; *Choate*, 215 Cal. App. 4th at 1469 ("Plaintiff' claim for waiting time penalties under sections 227.3 and 203 is not preempted. That claim is based solely on state law."); *Hicks v. Ralphs Grocery Co.*, 2013 WL 12081095, at *4 (C.D. Cal. Oct. 8, 2013) (no preemption because "the right to vacation pay is enshrined in California's labor law, and does not arise 'solely' under a collective-bargaining agreement").

As to the second prong, resolution of Plaintiffs' vacation pay claim does not require interpretation over disputed terms of a CBA.  Instead, resolution of the claim "requires nothing more than: 1) looking to the CBA to see what the vacation accrual rate was, and 2) performing the mathematical calculation necessary to determine whether Defendants paid Plaintiffs the full amount for unused vacation that had vested prior to termination." *Reyes v. CVS Pharmacy Inc.*, 2014 WL 584317, at *6 (E.D. Cal. Feb. 12, 2014) (vacation claim not preempted).  Here, as in *Reyes*, the CBA's provisions are not in dispute.  Nor are they "so ambiguous that the agreement would require interpretation." *Id*., at *7.  "Looking to the CBA merely to discern that none of its terms is reasonably in dispute, or the simple need to refer to bargained-for wage rates is not enough to warrant preemption." *Id*.; *Choate*, 215 Cal. App. 4th at 1469 (determining whether employees were entitled to waiting time penalties based on employer's failure to pay vested vacation immediately "only requires a court to ascertain whether the [CBAs] contain clear and unmistakable language waiving Plaintiffs' rights to 'vested vacation time.'").

Under Host's theory, all claims for vested vacation pay under § 227.3 would be

preempted if a CBA contained provisions for the accrual of vested vacation, and set forth the bargained-for rates. That is clearly not the case, and especially not here, where, unlike *Jaco*, there is no "live dispute over the meaning of a particular provision of the relevant CBA." *Jaco*, 2019 WL 1438069 at *6. Plaintiffs have worked for Host for 30 years. SAC ¶¶9-10. The questions regarding their claims are purely factual: did Plaintiffs have vested vacation pay at the time of termination and was it paid out "immediately"? The answer can be determined through Host's own records without analyzing the CBA.

Significantly, the only cases that have found vacation claims preempted are those with CBAs that require employees to forfeit their vacation pay if they are terminated for gross misconduct. *E.g.*, *Jaco*, 2019 WL 1438069, at *6; *Chissie v. WinCo Foods*, *LLC,* 2012 WL 487652, at *7 (E.D. Cal. Feb. 14, 2012) (CBA authorized forfeiture of vacation pay upon termination for "gross misconduct"). The CBA here does not require such forfeiture, and accordingly the Court should find no preemption.

### D.    Derivative Claims

Host argues that Plaintiffs' third, fourth and fifth causes of action should be dismissed because they are all derivative of Plaintiffs' first two claims for relief. Plaintiffs do not dispute Host's argument: if the Court dismisses Plaintiffs' first two claims with prejudice, the remaining claims are all derivative and should be dismissed as well.

### E.    The Court Should Not Dismiss the Waiting Time Penalty Claim

Host argues that the waiting time penalty claim should be dismissed because Host could not unilaterally raise wages and its actions were not willful. MTD at 19. Host does not challenge this claim to the extent it is premised on the failure to pay vacation wages immediately on termination. So, if the vacation claim survives, so does the § 203 claim.

Host's "good faith" argument fails for two reasons. First, Host's claim that it acted in "good faith" is a factual defense that the Court may not adjudicate on a Rule 12(b)(6) motion. "An affirmative defense is an insufficient basis for granting a motion to dismiss." *Yuckming Chiu v. Citrix Systems, Inc.*, 2011 WL 6018278 at *5 (C.D. Cal. Nov. 23, 2011) Whether Host acted "willfully" will require the Court to determine whether its good-faith

claim is "unsupported by any evidence, [is] unreasonable, or [is] presented in bad faith." 8 C.C.R. § 13520(a). The parties have not yet conducted discovery, so the defense may not be resolved. *See Powell v. Walmart Inc.*, 2021 WL 369550 (S.D. Cal. February 3, 2021) ("Plaintiffs will have to prove willfulness with evidence later in this litigation, but at this point, they have plausibly pleaded the element to survive this Motion to Dismiss.").

Plaintiffs have pled sufficient "willfulness" facts because they allege that Host laid them off but did not pay all of their earned wages or vacation pay. SAC ¶¶ 27-28. Plaintiffs have also alleged that Host's failure to pay them was willful, and that Host refused to pay them even after multiple employees complained in writing about LWO violations. SAC ¶¶ 4, 25. *See Duley v. Centerra Group, LLC*, 2020 WL 6526371, at *2-3 (C.D. Cal. August 27, 2020) (allegations that employees quit and employer deliberately failed to pay them final wages were "more than adequate to put Defendant on notice of Plaintiff's claim" and to survive a Rule 12(b)(6) motion). Moreover, Plaintiffs can easily bulk up their "willful" allegations because the BCA issued Host a "Notice to Correct" in January 2020, finding an LWO violation and requiring them to pay back wages to Plaintiffs and other LAX employees, but Host failed to make such payments when it terminated them. *See* Section III.B.3, *supra*. *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133-34 (C.D. Cal. 2011), cited by Host, is not to the contrary because *Alonzo* was decided on summary judgment after discovery into whether the defendants acted in good faith.

Second, even if the Court is inclined to address Host's willfulness defense now, Host's contention that it could not raise wages is simply wrong. As explained above, Host could have worked cooperatively with the Union to raise wages but chose not to. And, Host was free to unilaterally raise wage rates without being subject to an unfair labor practice charge. *See* Section III.B.4, *supra*; *Murphy Oil USA*, 286 NLRB 1039, 1041 (1987) ("[W]here changes in working conditions are mandated by changes in law, an employer does not violate Section 8(a)(5) by making such changes.").

Host cites *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 868 (2018), for the proposition that an "employer's failure to pay is not willful if that failure is due to (1)

uncertainty in the law." MTD at 19:19-25. But the fact that Host was free to raise employees' wages to the minimum level required by the 2018 LWO is not uncertain at all. Host was perfectly free to do so, yet chose not to.[3]

### F. The Court Should Not Dismiss Plaintiffs' Wage Statement Claim

Host argues that Plaintiffs' wage statement claim should be dismissed because "derivative wage statement claims are not recognized in California," citing *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018). MTD at 20. If the Court adopts *Maldonado*'s reasoning—that an employer's failure to list the correct wage rate or wages earned can never support a derivative § 226 claim—Plaintiffs agree that the Court should dismiss their § 226 claim.

However, the California Supreme Court is poised to rule in a highly-anticipated case, *Naranjo v. Spectrum Sec. Servs., Inc.*, 40 Cal. App. 5th 444 (2019), *review granted*, 455 P.3d 704 (Cal. Jan. 2, 2020), which will answer the related question whether derivative § 226 claims may be premised on an employer's violation of Labor Code § 226.7, which requires payment of premium wages for meal and rest break violations. *See* Pl. RJN Exh. 11. If the Supreme Court answers this question in the affirmative, *Maldonado* will be effectively overruled. Indeed, *Maldonado* recognized as much. *Maldonado*, 22 Cal. App. 5th at 1336 n.15. The *Naranjo* case is fully briefed, and should answer the "derivative penalty" question. Pl. RJN Exh. 12. Plaintiffs request that the Court defer its ruling on whether to dismiss the § 226 claim until *Naranjo* is decided.

Moreover, even to the extent the Court dismisses Plaintiffs § 226 claim because Plaintiffs' cannot meet the "injury" requirement set forth in § 226(e), the Court should nonetheless allow Plaintiffs' PAGA claim premised on Host's alleged violations of Labor

---

[3] Even if Host were unaware that it was permitted to raise wages unilaterally without violating section 8(d) and 8(a)(5) of the NLRA, it has not established a "good faith dispute that any wages were due" within the meaning of § 203. The wages were still "due" to employees regardless of Host's obligations under the NLRA. At best, Host is arguing that it could not legally pay the wages, but not that there was a good faith dispute over whether the wages were due in the first place.

Code § 226(a) to proceed.  *Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th 667, 679 (2018) ("[T]he requirements for a section 226(e) claim do not apply to a PAGA claim for a violation of section 226(a).").

### G.  UCL Claim

Host argues that the Court should dismiss Plaintiffs' UCL claim because it is wholly derivative of their LWO and vacation claims, and those claims have no merit. MTD at 21.  Plaintiffs agree that if the Court dismisses both claims, the UCL claim should be dismissed as well.  However, if either claim succeeds, the Court should not dismiss the UCL claim because back wages are recoverable as restitution through the UCL.  *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 177 (2000).

Host further argues that to the extent Plaintiffs' UCL claim is predicated on Labor Code § 226 or 203 penalties, it should be dismissed.  Plaintiffs agree that penalties cannot be recovered via the UCL, and can easily amend the UCL claim to say so should the Court deem it necessary.

### H.  PAGA Violations

Plaintiffs do not dispute Host's argument that their claim for PAGA penalties is derivative of their LWO and vacation claims, and that if both claims fail, their PAGA claim should be dismissed. MTD at 22.  However, if either succeeds, the Court should not dismiss the PAGA claim.

Host argues that Plaintiffs' PAGA claim should be dismissed to the extent it is premised on the alleged violation of Labor Code §§ 223 and 225.5.  MTD at 23.  However, in *Amaral*, 163 Cal. App. 4th at 1204, the court affirmed a trial court's award of PAGA penalties under § 225.5 based on a § 223 "secret wages" violation where the evidence showed that although the employer "was on notice of its obligations under the LWO and certified to the City its intention to comply with the LWO, Cintas failed to pay class members at the LWO rate."  *Id*.  If the LWO claim survives, then so should the PAGA claim for penalties under §§ 223 and 225.5.

Host argues that the Court should dismiss the PAGA claim as to Labor Code §§

-24-

204 and 210 because Plaintiffs' PAGA notice and the SAC did not contain supporting allegations.  Labor Code  § 204 provides that employers must pay their employees at least twice a month.  The employer's failure to pay all owed wages results in "mandatory" penalties under § 210.  *Amaral*, 162 Cal. App. 4th 1211.  In *Amaral*, the court approved the trial court's award of § 210 penalties based on § 204 violations where the employer failed to pay employees LWO wages and vacation wages due under § 227.3.  *Id*. at 1207.

While Host argues that Plaintiffs' LWDA notice (which included a copy of the complaint) does not allege specific facts to support a § 204 claim, nothing more is required than for Plaintiffs to allege that Host failed to pay the wages they were owed.  Both the LWDA notice and the complaint contain multiple allegations that Host failed to pay owed wages.  *See* Def. RJN Exh. G (stating that "Host failed to pay the minimum wage required by [the LWO]" and that Host failed to pay employees "the back wages they were owed in each pay period they were employed in the one-year period prior to the filing of this notice even after employees complained in writing that they had not been properly paid."); SAC ¶¶ 22-24, 42 (Host failed to pay owed minimum wages); ¶55 (Host failed to pay LWO and vacation wages owed upon discharge); ¶ 65 (Host failed to comply with the Labor Code's "timely payment" provisions); ¶¶ 73-74 (PAGA claim premised on Host's violation of § 204, entitled them to penalties under § 210).  Accordingly, the Court should not dismiss the PAGA claim to the extent it is premised on a violation of § 204.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Host's motion to dismiss the complaint in its entirety.

Dated: March 24, 2021

Respectfully submitted,
TEUKOLSKY LAW, APC
GILBERT & SACKMAN, ALC
JEREMY BLASI

By:   /s/Lauren Teukolsky
Lauren Teukolsky
Attorneys for Plaintiffs