| | |
|---|---|
| 1 | **HUNTON ANDREWS KURTH LLP** |
| 2 | Emily Burkhardt Vicente (State Bar No. 263990) |
|   | ebvicente@HuntonAK.com |
| 3 | D. Andrew Quigley (State Bar No. 280986) |
| 4 | aquigley@HuntonAK.com |
|   | Veronica A. Torrejón (State Bar No. 310871) |
| 5 | vtorrejon@HuntonAK.com |
| 6 | 550 South Hope Street, Suite 2000 |
|   | Los Angeles, California 90071-2627 |
| 7 | Telephone: 213 • 532 • 2000 |
| 8 | Facsimile: 213 • 532 • 2020 |
| 9 | Attorneys for Defendant |
| 10 | HOST INTERNATIONAL, INC. |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA LEWIS and MARLENE MENDOZA,<br><br>Plaintiffs,<br><br>v.<br><br>HOST INTERNATIONAL, INC. and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-00075 JAK (SKx)<br><br>[Assigned to Hon. John A. Kronstadt]<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:         August 16, 2021<br>Time:         8:30 a.m.<br>Courtroom:    10B<br><br>Removal Filed:           January 5, 2021<br>LASC Complaint Filed:    October 13, 2020<br>FAC Filed:               January 25, 2021<br>SAC Filed:               February 17, 2021 |

REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT

## I. INTRODUCTION

This lawsuit is about Plaintiffs trying to undo agreements their Union made on their behalf that they do not like. Their efforts to do so, however, run afoul of long-standing precedent governing collective bargaining relationships. Plaintiffs' Union agreed to supersede the provisions of the LWO and section 227.3. In return, they received other concessions and benefits as part of the give-and-take of the collective bargaining process. Any disagreement Plaintiffs have with their Union's actions must be taken-up with the Union or the NLRB. Those grievances are not a proper basis for this lawsuit and the SAC should be dismissed with prejudice.

## II. PLAINTIFFS' LWO CLAIM SHOULD BE DISMISSED

### A. The CBA Has Not Expired.

Host and the Union agreed to supersede the LWO, which the LWO permitted.[1] Plaintiffs argue this express supersession ceased to apply, however, because the CBA either "expired" or is "open for negotiation" as those terms are used in the LWO. But, the law is beyond clear that parties can agree to extend the term of a CBA beyond the dates listed in the original agreement. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 193 (1991); *Quebecor World Mt. Morris II, LLC & Graphic Commc'ns Conf./ Int'l Bhd. of Teamsters, Loc. 65-B*, 353 NLRB 1, 2 (2008). The language of the Extension Agreement is equally clear that "the CBA shall be in effect month-to-month, but shall be terminable upon five (5) day's written notice given by either party." *See* RJN Ex. B. Plaintiffs do not allege that either party provided a notice of termination (nor could they since it has not happened), and the CBA remains in effect. Knowing this to be true, Plaintiffs try to circumvent the Extension Agreement by claiming it should not be considered. But the CBA, which

---

[1] Plaintiffs claim Host did not submit evidence of the city's approval of supersession. But it was Plaintiffs' burden to plead that issue. Also, Plaintiffs are factually wrong. Host submitted its LWO exemption form and 2015-2018 CBA as required. *See* Brian Donohoe Declaration at ¶¶ 4-5, Ex. 1. Thus, any chance to amend would be futile.

the Extension Agreement is part of, is expressly referenced in the SAC and Plaintiffs' claims depend on the effect of the Extension Agreement. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998), as amended (July 28, 1998).

Plaintiffs urge the Court to adopt the BCA's finding that the CBA expired on October 31, 2018, and that LWO wages were owed after that time. The Court should not do so. First, the Court is not bound by the BCA, which has no expertise in labor law. Second, the BCA's determination is illogical and contrary to law. The BCA acknowledged that the Extension Agreement operated to extend the CBA from its original September 30, 2018 expiration date. But, for inexplicable reasons, the BCA arbitrarily found the extension was valid only for one month and expired on October 31, 2018. There is no support for this conclusion. The Extension Agreement expressly provides that the CBA is extended until one party gives notice to terminate it.[2]

Importantly, Plaintiffs avoid the import of what they are asking the Court to do by finding the CBA has expired. The ramifications of such a finding would be much more far-reaching than the present dispute. If the CBA expired, this means its obligations generally have expired, not just the supersession clause. This could mean the no-lockout clause and obligation to collect union dues, among other terms, also have expired. The Union and Host agreed to avoid these consequences by extending the CBA. Plaintiffs are attempting to upend the entire collective bargaining process and change the deal their Union struck. But, the Union is their representative and Plaintiffs are bound by the Union's agreement to extend the CBA.

### B.     The CBA Is Not Open For Negotiation

Plaintiffs also claim the CBA is "open for negotiation," but gloss over the fact that this language was never intended to apply to CBAs like the one at issue. The City has stated that the LWO's "open for negotiation" language was intended to address

---

[2] The BCA threatened to pull Host's funding, leaving it no choice but to acquiesce to the BCA's improper finding.

contracts under the Railway Labor Act ("RLA"). Def.RJN Ex. E. p.5. Agreements under the RLA generally do not expire, but are considered "open to negotiation" when there is an intervening change of law affecting the terms of the contract. *Id.* Host's contract with Local 11 arises under the National Labor Relations Act, not the RLA. Thus, the "open for negotiation" language from the LWO does not apply to Host's contract. Indeed, to find otherwise would make the language in the LWO addressing the obligation to retroactively pay wages once a contract is agreed upon superfluous. If an employer was required to raise wages immediately upon commencement of negotiations, there would never be any need for an employer to pay retroactive wages under the LWO. As a matter of statutory construction, Plaintiffs' argument must fail.

### C. The LWO Did Not Apply Immediately Upon Enactment

Plaintiffs argue the Court should read the LWO to mean the 2018 amendment applied to all extant CBAs *immediately* upon its effective date and no exemption is allowed unless renegotiated in a new CBA. Opp. at 8. Plaintiffs' proposed reading produces an absurd result. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (interpretations that would produce absurd results should be avoided in favor of alternatives consistent with legislative purpose). If the city intended the revisions to section 10.37.12 to immediately void previously valid supersessions, it would have said so, rather than including language about the effect of contract expiration. Also, LWO implementing documents acknowledge the potential increased costs for airport employers *after their existing CBAs expired*. MTD at 7-9. None of this analysis would have been necessary if the amendment applied immediately to all existing CBAs. It would have nullified valid supersession agreements in every existing CBA and thrown every covered employer out of compliance on the same day. Plaintiffs' reading of the LWO also is not supported by the BCA determination they tout. Even the BCA concluded the LWO was superseded through October 31, 2018 under the Extension Agreement. Plaintiffs' argument should be rejected.

### D. Plaintiffs Ignore Host's Ripeness Argument.

Plaintiffs ignore Host's argument that their LWO claims are not ripe. The Extension Agreement states that "any new agreement will be retroactive to September 30, 2018" so wage changes included in the parties' eventual new CBA will apply to the time periods covered by Plaintiffs' SAC. Def.RJN Ex. B. It is consistent with California law to allow parties to negotiate retroactive payments to meet state law, and involve the state only if the parties' agreements fail to comply with state minimum requirements. *Nat'l Broad. Co. v. Bradshaw*, 70 F.3d 69, 72 (9th Cir. 1995)(only applying overtime rules to gap period after parties failed to agree on retroactivity in new CBA). Plaintiffs' claims are premature unless Host fails to meet its commitment to make retroactive payments consistent with the LWO.

### E. Plaintiffs' LWO Claims Are Preempted By LMRA Section 301.

Plaintiffs' arguments about the effectiveness of the supersession language in the CBA and their contention that the extension agreement did not extend the term of the CBA demonstrate that their LWO claims require interpretation of the CBA. Plaintiffs admit the CBA contains a provision to exempt Host from LWO compliance, but dispute its effectiveness. Opp. at 2. That dispute is bound up in interpretation of the CBA and Extension Agreement.

Plaintiffs point to *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005 (9th Cir. 2018), arguing section 301 preemption does not apply to CBAs involving opt-outs from local minimum wage ordinances. But close examination of *McCray* shows Plaintiffs' proposition is overbroad and *McCray* is distinguishable. First, the San Jose ordinance in *McCray* was fundamentally different from the LWO. Section 10.37.12 of the 2016 LWO, explicitly allowed parties to agree to opt-out of the LWO minimum wage rules through a CBA while the San Jose ordinance provided for opt-out only "to the extent required by federal law." *McCray,* at 1008. *McCray* found no federal law *required* minimum wage rules be waivable, so the San Jose opt-out provision was

illusory "no matter what [the CBA] says." *Id*. at 1012. Quite the opposite here, where the CBA supersedes the LWO if it meets the requirements of the ordinance.

Second, the plaintiff in *McCray* did not challenge the substance of the waiver in the CBA. *Id*. at 1013. Here, Plaintiffs clearly put the CBA at issue by arguing that the extension agreement did not extend the term of the agreement. Whereas the need to interpret the CBA was merely "speculative" in *McCray*, it is a threshold issue here.

### F. Plaintiffs' LWO Claim Must Be Dismissed Under *Garmon*

Concerning *Garmon* preemption, Plaintiffs' cite multiple court decisions finding state and local minimum wage laws are not preempted by *Garmon* and argue those cases are dispositive here.[3] Opp. at 13. But those cases involved facial challenges. *See Associated Builders & Contractors, So. Cal. v. Nunn*, 356 F.3d 979, 989 (9th Cir. 2004) ("The case before us raises a facial challenge"); *Fortuna Enterprises, L.P. v. City of Los Angeles*, 673 F. Supp. 2d 1000, 1003 (C.D. Cal. 2008).

Host is not making a facial challenge to the 2018 LWO. It challenges *Plaintiffs attempted application of it* – to require a change in wage rates in the mid-term of a CBA when the parties expressly agreed, and the LWO allowed, otherwise. The cases cited by Plaintiffs held the NLRA does not preempt minimum labor standards that set a "backdrop" for future negotiations. But reading the LWO as a minimum wage backdrop is starkly different than reading it to require forced, immediate and unilateral mid-term changes to an existing CBA that the parties had *already agreed* would be exempt from the LWO's minimum rates.

If Host raised wage rates unilaterally, the Union could have filed unfair labor practice charges, particularly given the express supersession language in the CBA. The supersession language also distinguishes this case from *Standard Candy* and the other Fair Labor Standards Act cases cited by Plaintiffs. Opp. 15. The LWO permits

---

[3] Neither *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), nor *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), is on-point because both involve *Machinists* preemption, not *Garmon* preemption.

changes to the minimum wage rates and the parties agreed to supersession. Until the CBA expires, Host cannot, under the NLRA, unilaterally abandon that bargained-for exchange without arguably subjecting itself to unfair labor practice liability. Plaintiffs' assertions —not the LWO itself—create a classic *Garmon* preemption problem. In fact, Plaintiffs' citation to *Standard Candy* and a host of other NLRB decisions prove Host's point. Unilateral changes to a CBA can result in unfair labor practice charges and whether an unfair labor practice has occurred is squarely within the province of the NLRB to decide. This is exactly when *Garmon* preemption applies – to avoid court intervention in an area that must defer to the NLRB's exclusive jurisdiction.

Plaintiffs posit Host could have avoided a *Garmon* issue by trying to bargain with the Union over wage rate changes. Opp. 15. This is a red herring, inconsistent with Plaintiffs' entire theory of the case – that no matter what the status of bargaining or the CBA, the 2018 LWO imposed an immediate obligation to raise wage rates. Under Plaintiffs' theory, Host would have been liable for unpaid wages for every day the parties spent bargaining over how to comply with the LWO. Opp.16. Plaintiffs' argument is internally inconsistent with the other (groundless) LWO arguments raised in their brief. The argument is also disingenuous since the Union also could have bargained for an increase in LWO wages, but chose not to, presumably for tactical reasons – it did not want to agree to the LWO wage rate for fear it would impair the Union's position in wage negotiations. This only further illustrates that the Plaintiffs are attempting to use the Court to circumvent the lawful collective bargaining process.

## III. PLAINTIFFS' SECTION 227.3 CLAIM SHOULD BE DISMISSED

### A. The CBA Contains A "Clear And Unmistakable" Waiver.

Host and the Union agreed to waive the requirements of section 227.3 through a CBA and, therefore, Plaintiffs' attempt to recover under section 227.3 fails. Plaintiffs rely on an artificially narrow interpretation of the "clear and unmistakable" waiver standard to try to avoid this conclusion. They argue *Choate v. Celite Corp.*, 215 Cal. App. 4th 1460 (2013) is controlling, and the Court should not credit more recent

federal court precedent related to waiver. Opp. at 17-18. But *Choate* is distinguishable and the precedent since *Choate* has evolved as demonstrated by the more recent cases cited in Host's opening brief. *Choate* was about vacation accrual, not termination pay. Here, although Plaintiffs strain to fit the CBA provisions within *Choate*, the clauses at issue are not the same. The CBA provisions here clearly modify the default rules from the Labor Code. Like in *Jaco*, where the CBA provided employees would not be paid for accrued vacation when terminated for gross misconduct, the Host CBA dictates when and how employees will be paid vacation at termination. These direct references show a clear and unmistakable waiver under applicable precedent.

Plaintiffs' request to amend the SAC to exclude employees employed for less than one year misses the point. The Union and Host agreed to replace section 227.3 with the CBA. There is no basis to change that deal through a carve out.

**B.     Section 301 Preemption Applies Because There Are "Live Disputes" Over Multiple CBA Terms Related To Vacation**

Section 301 preemption also merits dismissal of Plaintiffs' vacation pay claims. By arguing over the meaning of CBA section 6.2 on page 18 of their brief, Plaintiffs prove Host's point. Determination of whether Plaintiffs are entitled to vacation pay depends on what Section 6.2 means and how it is interpreted. Since that analysis is substantially dependent on interpretation of the CBA, it is preempted.

Plaintiffs' attempt to compare this case to *Reyes* is inapt. Opp. 20. *Reyes* was decided before *Jaco*, and relies on the same older precedent with which Plaintiffs attempt to counter Host's waiver arguments. Also, in *Reyes*, the defendants did not identify specific contract provisions or policies that were relevant to the preemption analysis. *Reyes v. CVS Pharmacy Inc.*, 2014 WL 584317, at *7 (E.D. Cal. Feb. 12, 2014). Where there is a "live dispute" over the meaning of CBA provisions that affect a plaintiff's entitlement to statutory relief, section 301 preemption applies. *McCray* at 1012 (citing *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1035 (9th Cir. 2016)). Here, the CBA (and Plaintiff's own Opposition) contain clear examples

of "live disputes" that require the Court to interpret the CBA, establishing preemption.

## IV. PLAINTIFFS' WAITING TIME CLAIMS SHOULD BE DISMISSED

Plaintiffs' waiting time claim fails because Host acted in good faith. To establish good faith, Host need only show there is some uncertainty in the law, and it made its decision based on that uncertainty. Here, Host paid Plaintiffs the wage agreed to in the CBA rather than under the LWO. Because there was uncertainty as to the law in this regard, Host acted in good faith as a matter of law. *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 868 (2018)(employer's failure to pay not willful if due to uncertainty in law); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (defenses can be raised in a motion to dismiss).

## V. THE COURT SHOULD DISMISS PLAINTIFFS' SECTION 226 CLAIM

Plaintiffs acknowledge that *Maldonado v. Epsilon Plastics, Inc.,* 22 Cal. App. 5th 1308 (2018), is binding authority and if the Court adopts this authority, their section 226 claim must be dismissed. (p. 23) Plaintiffs ask the Court to defer ruling until *Naranjo v. Spectrum Sec. Servs., Inc.* is decided by the California Supreme Court. But, the Court should not defer because *Naranjo* will resolve a wholly different issue regarding premium payments not wages. In *Naranjo*, plaintiffs allegedly missed meal and rest breaks and were entitled to a "premium payment." 40 Cal. App. 5th 444, 474 (2019). The Court of Appeals held the employees could not pursue a derivative section 226 claim because the "premium payments" were statutory remedies, not "wages earned," and did not need to appear on the wage statements. *Id.* That is a different issue that that raised here. Thus, its holding is unlikely to impact *Maldonado*.[4]

## VI. PLAINTIFF'S SECTION 226(a) PAGA CLAIM FAILS

Plaintiffs argue their PAGA claim under section 226(a) should survive, relying on *Raines v. Coastal Pac. Food Distributor, Inc.*, 23 Cal. App. 5th 667 (2018). In

---

[4] *Maldonado* acknowledged the meal premium issue is a "related issue." It did not find its holding would be overruled by *Naranjo*.

*Raines,* the wage statements were deficient because they did not include the overtime hourly rate of pay as required by section 226(a)(9). *Id.* at 671. Because the omission of the hourly rate was a violation of section 226(a), the court found the plaintiffs could proceed with a PAGA claim without showing actual injury due to this omission. *Raines* is inapposite because Host's wage statements provide all nine categories of information required by section 226(a). There is no omission of information.

## VII. PLAINTIFFS' SECTION 204 AND 210 PAGA CLAIMS FAIL

Plaintiffs failed to provide factual allegations pertaining to their Labor Code sections 204 and 210 claims in their PAGA notice and SAC. Plaintiffs argue they satisfied their notice and pleading requirements by alleging that Host failed to pay minimum wages required by the LWO, citing to *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008). However, *Amaral* does not discuss the notice and pleading requirements under sections 204 and 210. *Id.* While Plaintiffs now clarify that their section 204 claim is premised on the LWO, this contradicts their PAGA letter, which only vaguely stated the 204 claim was based on violations "*of the Labor Code sections.*" (emphasis added). The LWO is not part of the Labor Code. Thus, these PAGA claims should be dismissed.

## VIII. CONCLUSION

For the foregoing reasons and those in its opening Motion, Host requests that the SAC be dismissed with prejudice.

DATED: April 7, 2021                               **HUNTON ANDREWS KURTH LLP**

By: */s/ Emily Burkhardt Vicente*
     Emily Burkhardt Vicente
     D. Andrew Quigley
     Veronica Torrejón
     Attorneys for Defendant
     HOST INTERNATIONAL, INC.